Rodrigo **PARTIDA**,
Petitioner-Appellant,

v.

Claudio **CASTANEDA**, Sheriff,
Respondent-Appellee.

No. 74–3966.

United States Court of Appeals,
Fifth Circuit.

Dec. 11, 1975.
Rehearing and Rehearing En Banc
Denied Jan. 28, 1976.

482

David G. Hall, San Juan, Tex., Melvin L. Wulf, New York City, for petitioner-appellant.

Thomas P. Beery, Oscar B. McInnis, Asst. Dist. Attys., Edinburg, Tex., Hidalgo County, for respondent-appellee.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

DYER, Circuit Judge:

Partida seeks habeas corpus relief contending that he was denied due process and equal protection of law because the grand jury of Hidalgo County, Texas, which indicted him, was unconstitutionally underrepresented by Mexican-Americans. The district court held that Partida had established a *prima facie* case of discrimination against Mexican-Americans in the grand jury selection process, but that it had been rebutted. Finding that the county's [1] evidence was insufficient to rebut the *prima facie* case, we reverse.

Partida was indicted on March 17, 1972, and was found guilty of the charge against him. On motion for a new trial, Partida presented his Mexican-American exclusion claim for the first time. His motion was denied and he appealed to the Texas Court of Criminal Appeals. Although his challenge to the grand jury was untimely [2] and, therefore, apparently waived,[3] the Texas court ignored that fact and proceeded to reject Partida's grand jury contention. *Partida v. State of Texas*, Tex.Cr.App., 1974, 506 S.W.2d 209. Thereafter, his petition for the writ was filed, dismissed, and this appeal taken.

■ Initially, respondent asks us to deny petitioner federal habeas corpus relief because he waived his challenge to the composition of the grand jury. However, the waiver argument was made to the Texas Court of Criminal Appeals which nevertheless chose to consider the merits of the claim. Under these circumstances, habeas relief may lie and the district court was correct in reaching the merits. *Warden v. Hayden*, 1967, 387 U.S. 294, 297, fn. 3, 87 S.Ct. 1642, 18 L.Ed.2d 782; *Irvin v. Dowd*, 1959, 359 U.S. 394, 406, 79 S.Ct. 825, 3 L.Ed.2d 900; *Hale v. Henderson*, 6 Cir. 1973, 485 F.2d 266, 269.

■■ Every criminal defendant is entitled to be indicted and tried by grand and petit juries whose members have been selected in a non-discriminatory manner. Jury discrimination, however, is not an easy matter of proof. The "rule of exclusion" is usually utilized. According to this rule, a *prima facie* case of discrimination is established by showing a disparity between (1) the percentage which the ethnic or racial group constitutes of the persons from whom a jury list is drawn and (2) the percentage which that group constitutes of the jury list compiled. Once a defendant establishes his *prima facie* case, the burden shifts to the State to offer a satisfactory explanation why the disparity exists. *Muniz v. Beto*, 5 Cir. 1970, 434 F.2d 697, 700.

Partida relied on the rule of exclusion to establish his *prima facie* case. First, he demonstrated that Mexican-Americans constituted a separately identifiable ethnic group in Hidalgo County, Texas. Then, he introduced evidence that in 1970, the total population of Hidalgo County was 181,535 persons of which 143,611, or approximately 79.2%, were persons of Spanish language or Spanish surname.[4] Next, petitioner presented

---

1. The writ was directed to the Sheriff of Hidalgo County who was holding Partida.

2. Vernon's Ann.C.Cr.P. art. 19.27, provides in pertinent part:

"Before the grand jury has been impaneled, any person may challenge the array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard."

Art. 27.03 provides:

"[A] motion to set aside an indictment . . . may be based on the following:

. . . That the grand jury was illegally impaneled; provided, however, in order to raise such question on motion to set aside the indictment, the defendant must show that he did not have an opportunity to challenge the array at the time the grand jury was impaneled." Cf. F.R.Crim.P. 12(b)(2) and (f).

3. *Wilson v. Estelle*, 5 Cir. 1974, 504 F.2d 562, 563; *Tyson v. State*, 1943, 146 Tex.Cr.R. 128, 171 S.W.2d 496, 497–498.

4. The figures were obtained from the 1970 Census of Population conducted by the United

evidence showing the composition of the grand jury lists[5] over a period of ten years prior to and including the term of court in ·which the indictment against him was returned. Of the 870 persons selected for grand jury duty, only 39.0% were Mexican-Americans. In the two and one-half year period previous to the indictment, 45.5% of the panelists were persons of Mexican descent.

◼ As these figures show, the disparity between Mexican-Americans in the population and those on the grand jury was significant: over the full ten year period, it was 40.2%; for the shorter two and one-half year period, it was 33.7%.[6] This disparity clearly establishes a *prima facie* case. *Black v. Curb*, 5 Cir. 1972, 464 F.2d 165; *Colson v. Smith*, 5 Cir. 1971, 438 F.2d 1075; *Preston v. Mandeville*, 5 Cir. 1970, 428 F.2d 1392; *Muniz v. Beto, supra.*

Respondent then had the burden to rebut petitioner's statistical presentation. It is at this juncture that we disagree with the district court.

◼ Respondent's rebuttal evidence was limited to the testimony of State District Judge Alamia, who selected the grand jury commissioners, who selected the grand jury who indicted petitioner.[7] Judge Alamia offered no explanation for the disparity. Indeed, he testified that he sought a balance of grand jury commissioners according to ethnic origin, race, sex and age, yet did not instruct the commissioners to do the same. In addition, he admitted that the grand jury selection process has not resulted in ethnically-representative grand jury panels.

◼ In addition to Judge Alamia's testimony, the district court based its decision on the "governing majority" status of Mexican-Americans in Hidalgo County.[8] He reasoned that Mexican-Americans in such a position would not purposefully and intentionally discriminate against themselves. Therefore, the discriminatory intent presumed by petitioner's *prima facie* case was overcome. We cannot agree. The fact of governing majority status may mollify the *prima facie* case, but it does not nullify it. This may be done only by proof to explain the disparity. Without it, petitioner must prevail.

◼ While the Texas system of selecting grand jurors is constitutional, *Smith v. Texas*, 1940, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; *Brooks v. Beto*, 5 Cir. 1966, 366 F.2d 1, the unbridled discretion afforded the jury commissioners to prepare the grand jury list requires close scruti-

States Census Bureau, Department of Commerce. Since there was no contrary showing, we accept petitioner's assertion that the terms "Spanish surname" and "Spanish language" as used in the census reports are synonymous with persons of Mexican descent in Hidalgo County.

5. The grand jury "list" refers to the 15–20 persons selected by the jury commissioners from whom a grand jury panel of 12 is selected. See fn. 7.

6. The grand jury list prepared in the term Partida was indicted was 50% Mexican-American while the panel itself was 40%. The disparities were 29.2% and 39.2% respectively.

7. This bit of verbal gymnastics exemplifies the organization of the Texas grand jury system. A state district judge appoints not less than three nor more than five jury commissioners, who must be residents of different portions of the county and must not have served previous-ly in the same year. Art. 19.01. They, in turn, select not less than 15 nor more than 20 persons "from the citizens of different portions of the county" as grand jurors, Art. 19.06, who, among other things, must be able to read and write and must be of sound mind and good moral character, Art. 19.08. The 15–20 persons are "tested," Art. 19.21, and they are "interrogated," Art. 19.22, by being asked prescribed questions, Art. 19.23. Then 12 of them are impaneled by the district judge as the grand jury. Art. 19.26

8. "Here, 80% of the population is Mexican-American, the majority of the voting population is Mexican-American, the majority of the elected officials are Mexican-American, the majority of the judges and jury commissioners are also Mexican-American, and Mexican-Americans in significant percentages have served on every grand jury in the last ten years." Memorandum Opinion of District Court, p. 18.

ny of the disparities and the proof offered to explain them. Here, the disparities are too great and the proof offered too paltry.

The district court's judgment is reversed and the case is remanded for further proceedings consistent with this opinion.[9]

Reversed and remanded.

---

**9.** We do not suggest that proportional representation or some percentage approximating it is required to survive constitutional attack. Cf. *Swain v. Alabama*, 1965, 380 U.S. 202, 208–09, 85 S.Ct. 824, 13 L.Ed.2d 759. The unexplained disparities here are simply too great and too long existent for the county system to escape unrectified.