John NEWMAN, Petitioner-Appellee,

v.

C. Murray HENDERSON, Warden, Louisiana State Penitentiary, Respondent-Appellant.

No. 73–3393.

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1976.

Rehearing and Rehearing En Banc Denied Dec. 13, 1976.

Shirley G. Wimberly, Asst. Dist. Atty., Louise Korns, Barbara Rutledge, New Orleans, La., for respondent-appellant.

John W. Reed, New Orleans, La. (Court-appointed), for petitioner-appellee.

Before DYER and MORGAN, Circuit Judges, and KRAFT *, District Judge.

DYER, Circuit Judge:

In 1964, Newman was convicted of aggravated rape in the Criminal District Court in the Parish of Orleans, Louisiana. He did not appeal. He unsuccessfully applied for a writ of habeas corpus in Louisiana courts, charging racial discrimination in the selection of the grand jury which had indicted him. His petition was rejected on the ground that the grand jury system prevailing at the time of his indictment had not been discriminatory. His application to the Supreme Court of Louisiana was denied. Newman then sought federal habeas relief. The district court granted Newman's petition, concluding that the state had failed to rebut the prisoner's prima facie showing of

* Senior District Judge of the Eastern District of Pennsylvania, sitting by designation.

grand jury discrimination. We vacated the district court's grant of habeas relief, *Newman v. Henderson*, 5 Cir. 1974, 496 F.2d 896, and directed that the petition be dismissed because of the district court's failure to consider the waiver-by-failure-to-object principle of *Davis v. United States*, 1973, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216. The United States Supreme Court granted certiorari, vacated the judgment and remanded the cause to this Court for further consideration in light of *Lefkowitz v. Newsome*, 1976, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196, and *Francis v. Henderson*, 1976, 425 U.S. ——, 96 S.Ct. 1708, 48 L.Ed.2d 149. We proceed to do so.

■ The application of Newman was considered on the merits in the state courts. Because "the state courts entertained the federal claims on the merits, a federal habeas court must also determine the merits of the applicant's claim." *Lefkowitz v. Newsome*, 1975, 420 U.S. 283, 292, 95 S.Ct. 886, 891, 43 L.Ed.2d 196 n. 9; *Francis v. Henderson*, 1976, 425 U.S. ——, at ——, 96 S.Ct. 1708 at 1711, 48 L.Ed.2d 149 n. 5. Therefore, it is now clear that the waiver principle of *Davis* does not stand as a bar to a federal determination of the merits of Newman's constitutional claim.

■ On the merits, the state does not attack the findings of the district court that there was a systematic exclusion of qualified citizens from the grand jury that indicted Newman. It simply argues that under the provisions of 28 U.S.C.A. § 2254(d) the district court should not have held an evidentiary hearing on Newman's challenge to grand jury selection methods, but was barred by decisions of the Louisiana Supreme Court in cases brought by other parties during the same period in which it was held that the system of grand jury selection for the Orleans Parish grand jury was not discriminatory.[1] The state, in essence, argues that the district court was bound to resolve Newman's challenge by the findings of fact in the prior cases. The flaw in

Louisiana's argument is that Newman was not a party to the other state cases. Therefore, § 2254(d)'s provision is inapposite.

The Orleans Parish Jury Commission followed a systematic policy of exclusion of wage earners, a practice already condemned by this Court in *Labat v. Bennett*, 5 Cir. 1966, 365 F.2d 698. Furthermore, in January of 1962 (the year of Newman's state indictment) blacks comprised 31.9% of the male population between the ages of 21 and 64 with at least five years of education, but only 13% of persons called for jury duty in that month were black.

■ It has long been the rule in this Circuit and elsewhere that a *prima facie* case of discrimination is established by showing a disparity between the percentage which the racial group constitutes of the persons from whom a jury list is drawn, and the percentage which that racial group constitutes of the jury list which is thereafter compiled. Once a *prima facie* case has been established, the burden shifts to the state to offer a satisfactory explanation why the disparity exists. *Partida v. Castaneda*, 5 Cir. 1975, 524 F.2d 481, cert. granted 1976, —— U.S. ——, 96 S.Ct. 2645, 49 L.Ed.2d 385 (1976); *Muniz v. Beto*, 5 Cir. 1970, 434 F.2d 697. In our view, this approach remains sound, and is not affected by the recent decision of the Supreme Court in *Washington v. Davis*, 1976, —— U.S. ——, 96 S.Ct. 2040, 48 L.Ed.2d 597.

In *Washington*, applicants for positions on the Washington, D. C. police force claimed that a written examination used to screen applicants was discriminatory, and thus invalid under the Fifth Amendment. The district court found that the number of black police officers was not proportionate to the population mix of the city, that a higher percentage of blacks failed the test than whites, and that the test had not been validated to establish its reliability. The Supreme Court rejected the view of the Court of Appeals for the District of Columbia that these facts, without proof of dis-

---

1. Louisiana relies on *State v. Barksdale*, 1964, 247 La. 198, 170 So.2d 374, cert. den. 1965, 382 U.S. 921, 86 S.Ct. 297, 15 L.Ed.2d 236; *State v.*

*Evans*, 1966, 249 La. 861, 192 So.2d 103, cert. den. 1967, 389 U.S. 887, 88 S.Ct. 110, 19 L.Ed.2d 187.

criminatory intent, were sufficient to establish a constitutional violation. Rather, the Supreme Court held that proof of discriminatory purpose, as well as proof of discriminatory impact, was necessary to establish such a violation.

However, the Supreme Court recognized that discrimination in the grand jury context might require a different rule:

> It is also not infrequently true that the discriminatory impact—in the jury cases for example, the total or seriously disproportionate exclusion of Negroes from jury venires—may for all practical purposes demonstrate unconstitutionality because in various circumstances the discrimination is very difficult to explain on nonracial grounds.[2]

—— U.S. at ——, 96 S.Ct. at 2049. In our view, the distinctions between the selection process attacked in Washington and the grand jury selection process here considered demand that independent proof of discriminatory purpose required in the former not be mandated for the latter.[3]

As the Supreme Court recognized, proof of discriminatory impact in Washington had little probative force with regard to the question of discriminatory intent. Although discriminatory impact is logically consistent with a discriminatory intent on the part of those administering the selection process, it is equally consistent with a conclusion that the whites taking the examination were better qualified as a group than the blacks taking the same examination. Independent proof of discriminatory intent is required so that a probative choice can be made between these two alternatives. —— U.S. ——, ——, 96 S.Ct. 2040, 2050, 48 L.Ed.2d 597.

In the grand jury context, the disparity which must be proved in order to establish a *prima facie* case of discrimination is not a disparity between the percentage of the population which the racial group constitutes and the percentage which that group occupies on the grand jury list, but rather a disparity between the latter and the percentage of those *qualified to sit* on the grand jury which the racial group constitutes. In this situation, any disparity cannot be attributed to the fact that one group is better qualified than another, as in *Washington*, because this factor has been taken into account in defining the disparity. The disparity can reasonably be inferred to result solely from the selection process. Cf. *James v. Wallace,* 5 Cir. 1976, 533 F.2d 963. Where in *Washington* an inference of discriminatory purpose could not be made from the fact of discriminatory impact, here an inference of discriminatory purpose is a reasonable one. And, since the State was unable to offer any explanation as to why the disparity exists, the inference of discriminatory purpose is the *only* reasonable one.

Without a satisfactory explanation as to the cause of the disparity, we do not have before us a policy "neutral on its face and serving ends otherwise within the power of government to pursue". *See* fn. 2, *supra.* Therefore, we do not find *Washington* controlling, and we reaffirm the approach to grand jury discrimination cases exemplified in *Partida, supra,* and *Muniz, supra,* and utilized by the district court below.

The judgment of the district court is

AFFIRMED.

**2.** The Supreme Court, directly following this statement, said:

> Nevertheless, we have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another.

—— U.S. at ——, 96 S.Ct. at 2049. As will be shown, we do not believe this statement alters the result in this case.

**3.** This is not to say that there is no proof of discriminatory purpose in the case before us. That purpose is inferred from the discriminatory impact and the failure of the state to offer a sufficient nonracial explanation for that impact.