Alfredo ESPINOZA, Appellant,

v.

The STATE of Texas, Appellee.

No. 57020.

Court of Criminal Appeals of Texas, Panel No. 3.

June 11, 1980.

Rehearing Denied Sept. 24, 1980.

Cameron M. Cunningham and Brady Coleman, Austin, for appellant.

Steve W. Simmons, Dist. Atty., and Douglas Gelo, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of arson. The punishment is imprisonment for two years.

The appellant filed a timely motion to quash the indictment alleging that Spanish–surnamed persons were systematically excluded from El Paso County grand juries for the period of 1965–1976. The appellant was indicted September 11, 1975. The trial court after hearing the motion overruled it and refused to quash the indictment.

The sole ground on which the appellant seeks reversal of the judgment is the trial court's alleged error in refusing to quash the indictment. The appellant says that *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) is dispositive of this appeal and mandates a reversal of his conviction. We disagree.

█ Every criminal defendant is entitled to be indicted by a grand jury whose members have been selected in a non–discriminatory manner. *Hernandez v. Texas*, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); *Partida v. Castaneda*, 524 F.2d 481 (5th Cir. 1975). In the record in the instant case there is evidence that the class to which the appellant belongs was underrepresented for several years prior to the time the appellant was indicted; however, the appellant fails to show the composition of the grand jury that indicted him. For all we know every member of the grand jury that indicted the appellant had a Spanish surname. Unlike the record in this case, the record in the United States Court of Appeals for the Fifth Circuit in *Partida v. Castaneda*, supra, and the record in the Supreme Court of the United States in *Castaneda v. Partida*, supra, revealed that there was in Hidalgo County where Partida was indicted a population of 79.2% with Spanish surnames. The record indicated that five of the twelve grand jurors had Spanish surnames. The grand jury list prepared in the term Partida was indicted was 50% Mexican-American while the panel itself was 40%. The disparities were 29.2% and 39.2% respectively. *Castaneda v. Partida*, supra.

█ Since the appellant failed to show the composition of the grand jury which indicted him, evidence showing the composition of the grand juries for the ten preceding years was irrelevant. If the class to which a defendant belongs is fully represented on the indicting grand jury the defendant suffers no injury and exclusion of members of the class from earlier grand juries is irrelevant to his case. Only if the defendant's class is substantially underrepresented on the indicting grand jury does the makeup of prior grand juries become relevant to explain whether this underrepresentation on the indicting grand jury is a

statistical accident or the result of purposeful discrimination.

█ If a defendant could successfully move to quash his indictment solely by showing underrepresentation of his class on past grand juries it would be impossible to correct the prior constitutional error. It offends both common sense and sound public policy to suggest that indictments returned by grand juries on which all recognizable classes in the community are fully represented should nevertheless be dismissed to atone for the sins of the past.

The judgment is affirmed.

CLINTON, Judge, dissenting.

Appellant timely filed a motion to quash the indictment in this cause on the ground that Spanish surnamed persons were systematically excluded from El Paso County grand juries for the 10½ year period (1965–1976) preceding and *including* the term during which the return of indictment against him was made,[1] as well as the first term of 1976. A pretrial hearing was held on the motion at which appellant offered expert testimony in support of his claim. The trial court thereafter entered findings of fact and conclusions of law, and denied the motion to quash.

Appellant now alleges in his sole ground of error that the trial court erred by its ruling, because appellant established a *prima facie* case that Spanish surnamed[2] persons were systematically excluded from serving on El Paso County grand juries during the period of from 1965 until 1976.

Appellant relies upon *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) in which the United States Supreme Court held that a *prima facie* case of racial discrimination in the *selection* of grand jurors is established by showing a disparity between the proportion of Mexican–Americans in the total county population and the proportion called to serve as grand jurors over a significant period of time. Once an accused makes such a showing, it behooves the State to rebut the inference of intentional discrimination. In *Castaneda*, supra, the State prisoner, Partida, introduced evidence showing that the population of Hidalgo County was 79.1% Mexican–American, but that over an eleven year period, the average percentage of the total persons summoned for grand jury service was only 39% Mexican–American. This showing alone was held to have established a *prima facie* case of systematic discrimination against Mexican–Americans in the Hidalgo County *grand jury selection process.*

In support of his motion in the instant case, appellant presented the expert testimony of Diane Fairbanks, Ph.D., concerning data gathering methods employed, the identification of Spanish surnamed persons in El Paso County and the statistical analysis of the data.

According to Dr. Fairbanks, 1970 United States Census data reflected that in El Paso County, 51% of the population over 18 years of age were Spanish surnamed. Of the persons summoned for grand jury service during 1965–1976,[3] 21%[4] were Spanish surnamed. A proportional number of Spanish

1. The record before us reflects that appellant was indicted during the July term of the El Paso County grand jury in 1975. Thus, the focus of the majority opinion on the "preceding ten years," "past grand juries" and "sins of the past" is, at best, imprecise.

2. "Spanish surnamed" and "Mexican–American" will be used interchangeably throughout this opinion. See *Castaneda v. Partida, infra,* at 1276, n.5 of 97 S.Ct.

3. This figure included only the first grand jury term of 1976, the term immediately succeeding the one during which appellant was indicted. According to Dr. Fairbanks, this 1976 grand

jury was composed of the lowest percentage of Spanish surnamed persons of those in the preceding 10 years, with the only "match" being the grand juries of 1965. The likelihood that "every member of the grand jury that indicted appellant had Spanish surnames" is infinitesimal. See n.5 *post.*

4. Dr. Fairbanks determined from grand jury lists maintained by the district clerk that 222 Spanish surnamed persons were called for service as grand jurors from 1965 through the first grand jury term of 1976, of approximately 1,054 grand jurors summoned.

surnamed grand jurors to the total number would correspond to the proportion of Spanish surnamed persons to the total county population over 18, i. e., 51%. Dr. Fairbanks testified that if a random process had been used to select prospective grand jurors from the El Paso County population over 18, the proportion of Spanish surnamed persons who in fact were called for service (21%) would have occurred less than 1 in 10,000,000 times, by chance, given there are 51% Spanish surnamed persons over 18 in the County.[5]

Another method of analysis presented by appellant through Dr. Fairbanks illustrated a 59% disparity between the percentage of Spanish surnamed persons in the population and the percentage of the class summoned.[6] Dr. Fairbanks stated that if Spanish surnamed aliens (7% of the population over 18) were excluded, the number of Spanish surnamed citizens would constitute 44% of the El Paso County population over 18. Thus, the disparity between Spanish surnamed citizens and Spanish surnamed summoned is 52%. According to Dr. Fairbanks such a

disparity would occur by random chance less than 1 time in 10,000,000. See n.5, *ante.*

Excluding aliens, there are 96,000 Spanish surnamed persons in El Paso County. According to Dr. Fairbanks, a total number of the eligible class who have not had an opportunity to serve on grand juries over the 10½ year period can be calculated by multiplying the disparity (52%) by the number of the class in the total population (96,000).[7]

Dr. Fairbanks further testified that Spanish surnamed persons constituted an identifiable class, separate and apart from other persons in El Paso County. Among the factors which reflect that the class is cognizable, Dr. Fairbanks mentioned language use as a primary and pervasive cultural difference, family patterns, beliefs, cultural traditions in food and music and similar response to community issues. According to Dr. Fairbanks, the Anglo community looks upon Mexican–Americans as a separate category of people, the community

---

5. The issue framed by the Supreme Court for its consideration in *Castaneda* was:

   ". . . whether the State of Texas . . successfully rebutted respondent [Partida's] prima facie showing of *discrimination* against Mexican–Americans *in the* state *grand jury selection process.*"
   430 U.S. 483–484, 97 S.Ct. 1274–1275.
   The Court delineated the burden of proof devolving upon one who would "show that the *procedure employed* resulted in substantial under-representation of [the] . . . identifiable group to which he belongs" thus:
   After establishing that the group is "one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied," the accused must show "the degree of underrepresentation . . . by comparing the portion of the group in the total population to the proportion called to serve as grand jurors, over a *significant period of time.*" 430 U.S. 494, 97 S.Ct. 1280.

   The Court stated that this method of proof—"the rule of exclusion"–is available for proving "discrimination in jury *selection* against a delineated class."
   Explained the Court:
   "The idea behind the rule of exclusion is not at all complex. If a disparity is sufficiently large, then it is unlikely that is is due solely to chance or accident, and, *in the absence of evidence to the contrary, one must conclude that racial or other class–related factors entered into the selection process.*"
   *Id.*, n.13, 97 S.Ct. 1280.
   (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

6. "Disparity" is determined by subtracting the percentage of Spanish surnamed persons called, from the percentage of the class in the county population, and dividing the difference by the percentage of the class in the total population, e. g.:

$$\frac{(\% \text{ of Spanish surnamed in county}) - (\% \text{ of Spanish surnamed summoned})}{(\% \text{ of Spanish surnamed in county})} = \text{Disparity}$$

$$\text{or, } \frac{(51) - (21)}{(51)} = 59\% \text{ Disparity}$$

---

7. Though the record does not contain the final calculation in this regard, the mathematical conclusion can be determined thus:

52% of 96,000–49,920 Spanish surnamed citizens who have never been summoned.

response to which is illustrated by bilingual education in public schools, a Spanish radio station transmitted from within the county and a strictly Spanish newspaper published within El Paso. Spanish surnamed persons constitute the second largest minority in the United States, and this minority has been recognized in the field of sociology for over 40 years, with studies having begun in the 1930's. In Fairbanks' opinion there was no question that Spanish surnamed persons constitute a cognizable class in El Paso County.[8]

The impact of racial exclusion on any phase of our constitutional jury system and concomitantly, on the fair and even–handed administration of justice is austere:

Illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well. * * * When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented.

Peters v. Kiff, 407 U.S. 493, 502–504, 92 S.Ct. 2163, 2169, 32 L.Ed.2d 83 (1972).

The Supreme Court has regarded mathematical disparities less than those apparent here as adequate for establishment of a prima facie case of systematic exclusion. E. g., Castaneda v. Partida, supra, (79.1% Mexican–Americans in population, 39% of grand jury lists, calculated [as here] disparity = 50.7%); Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), (60% blacks in general population, 37% on grand jury lists, calculated [as here] disparity = 38.3%.)[9]

---

8. See Castaneda, supra at 1280 of 97 S.Ct. where the Supreme Court stated:

"In this case, it is no longer open to dispute that Mexican–Americans are a clearly identifiable class. See, e. g., Hernandez v. Texas [347 U.S. 475, 74 S.Ct. 667, 98 L.Ed.2d 866 (1954).] Cf. White v. Regester, 412 U.S. 755, 767, 93 S.Ct. 2332, 2340, 37 L.Ed.2d 314 (1973). [Wherein it was stated: 'Surveying the historic and present condition of the Bexar County Mexican–American community, . . . the [District] Court observed, based upon prior cases and the record before it, that the Bexar County community, *along with other Mexican–Americans in Texas, had long "suffered from, and continues to suffer from, the results and effects of invidious discrimination and treatment in the fields of education, employment, economics, health, politics and others."* ' * * * 'The District Court found that "[t]he fact that [Mexican–Americans] are reared in a subculture in which a dialect of Spanish is the primary language provides permanent impediments to their educational and vocational advancement and creates other traumatic problems." ' Id. at n.13]. The statistics introduced by [Partida] from the 1970 census illustrate disadvantages to which the group has been subject. Additionally, as in Alexander v. Louisiana [405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972)], the selection procedure is not racially neutral with respect to Mexican–Americans; Spanish surnames are just as easily identifiable as race was from the questionnaires in Alexander or the notations and card colors in Whitus v. Georgia [385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967)], and in Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953)."

In the instant case, appellant Espinoza introduced evidence based on the 1970 Census that the disparity between the number of unskilled workers in El Paso and the number of unskilled who served on grand juries during the period under study, was 93%. According to Dr. Fairbanks, a 100% disparity would indicate a *total* exclusion of such persons from grand jury service. It is therefore a reasonable inference that a large majority of unskilled workers would likewise fall into the pool of Spanish surnamed persons, clearly illustrating cultural, educational and economic disadvantages within the county.

9. For purposes of consistency with appellant's method of proof, the disparities given are calculated according to the formula used by Dr. Fairbanks. See n.6, ante. Under this method, a 100% exclusion will be reflected by a 100% disparity. [See also n.8, ante, regarding disparity of unskilled working grand jurors in El Paso County.]

The Supreme Court in Castaneda v. Partida, supra, spoke of "disparity" in terms of simply the difference between the percentage of the class in the population and the percentage of

Accordingly, I am convinced that appellant established a *prima facie* case of systematic exclusion of Spanish surnamed persons during the period under study; as such, I would hold that the trial court erred in overruling appellant's motion to quash the indictment.

The statistical charts on which Dr. Fairbanks based her opinion were offered and admitted into evidence over the State's objection, as defense exhibits one through four. Unfortunately, only two of these exhibits arrived with the record filed in this Court.[10]

Most of the data on which my analysis is made was gleaned from the testimony of Dr. Fairbanks as she referred to the statistical exhibits. There was, however, no testimony regarding the exhibit which reflected the racial composition of the grand jury which indicted appellant in the July term of 1975.[11]

The majority erroneously suggests that I construe *Castaneda,* supra, to hold that a *prima facie* showing of racial discrimination in the selection of grand jurors *in the past* compels the dismissal of appellant's indictment, without considering the composition of the grand jury which indicted appellant. On the contrary, I read *Castaneda,* supra, to

require a showing of an *average percentage disparity over an extended period which INCLUDES the accused's indicting grand jury,* in order to establish a *prima facie case* of racial discrimination in the grand jury *selection method employed.* Such a showing has been made here and is reflected on the record before us.

I further read *Castaneda* to hold that upon the establishment of a *prima facie* case by the accused, the *burden shifts to the State* to rebut the inference of intentional discrimination. Had the grand jury which indicted appellant been composed of Spanish surnamed persons in a proportion equal to or greater than their proportion in the population of El Paso County as the majority suggests, I believe that the burden was on the State to make a rebuttal issue of such fact and come forth with proof thereof.[12] Instead, the State presented no evidence to rebut appellant's *prima facie* case, and on appeal claims only that appellant failed to establish that Spanish surnamed persons constitute a cognizable class within the El Paso community. This argument is utterly frivolous. [See n.8, *ante,* and accompanying text; cf. *Carrillo v. State,* 566 S.W.2d 902 (Tex.Cr.App.1978).]

The State's having failed to rebut appellant's *prima facie* showing, appellant's

---

the class on grand juries or grand jury lists. Under this method, the case appellant Espinoza has presented here is also more compelling than those presented in *Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), (27.1% blacks in population, 9.1% on grand jury venire); *Sims v. Georgia,* 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967), (24.4% on tax lists, 4.7% on grand jury lists); *Jones v. Georgia,* 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967), (19.4% on tax lists, 5% on grand jury lists); *Hernandez v. Texas,* supra, (14% in population, 0% on grand juries for 25 years); *Norris v. Alabama,* 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935), (9.9% black population, 0% on grand juries in record keeping history).

The disparity calculation employed by appellant Espinoza is doubtless more revealing than merely looking at the simple difference between percentages of a class in the population and the percentage represented on grand juries. For example, if the class in question constitutes 6% of the population and 3% of grand jurors

over a significant period of time, the statistical disparity (as appellant presents here) would be:

$$\frac{(6) - (3)}{(6)} = 50\% \text{ Disparity}$$

By contrast, taking merely the difference between the percentages (as discussed in *Castaneda,* supra) computes as a somewhat misleading 3% "disparity."

10. The Clerk of this Court thereafter requested that the district clerk forward all exhibits contained in the record. The district clerk replied that no other exhibits were contained in his file of this cause.

11. It appears from the record that this exhibit contained no statistical analysis or data requiring explanation, but was simply a list of the names of the grand jurors.

12. Indeed, this was the very rebuttal advanced by the State in *Castaneda* before the Supreme Court of the United States.

ground of error should be sustained [13] [see *Castaneda, supra*]; I am disappointed that the implications of appellant's allegation strike no responsive chord in the majority other than apparent motivation to dispose of them in the most expedient manner necessary to that end.

For the reasons expressed, I respectfully dissent.

13. At a very minimum–considering the insidiously dire result of unconstitutional grand jury selection procedures–I would abate this appeal and remand the cause to the trial court pursuant to Article 44.11, V.A.C.C.P., which provides in part:

"In cases where the record or any portion thereof is lost or destroyed it may be substituted in the trial court and when so substituted the record may be prepared and transmitted to the Court of Criminal Appeals as in other cases."

There is ample indicia from the record before us that the exhibit in question–the absence of which is employed by the majority to palliate its disposition–has been lost or destroyed. It seems to me that fundamental fairness is the thing lost when an appellant has made the very showing required by *Castaneda*, and this Court not only alleviates the State of its burden of proof, but also rushes to disposition without assurance that the record before us "speaks the truth."