Willie Melvin STANLEY, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 111–84.

Court of Criminal Appeals of Texas, En Banc.

July 18, 1984.

Michael James Krueger, Kingsville (court appointed on appeal), for appellant.

F.A. Cerda, Dist. Atty. and Rodolfo V. Gutierrez, Asst. Dist. Atty., Hebbronville, Gocha Allen Ramirez, Asst. Dist. Atty., Rio Grande City, Robert Huttash, State's Atty., Austin, for the State.

1. Unless controverted (which it is not in this case), such data is acceptable in grand jury discrimination analysis. *Castaneda v. Partida,* supra.

## REFUSAL OF PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge, dissenting.

After being convicted of murder by a properly constituted petit jury, appellant asks us to consider his timely filed motion to quash indictment. In his motion, he claims grand juries in Duval County were improperly selected for a period of 14 years.

As set out below, appellant makes out an uncontroverted prima facie case. See *Duren v. Mississippi,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977).

First, those excluded, women, have been recognized as a distinctive group for purposes of jury composition since 1946. *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1974); *Ballard v. United States,* 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946).

Second, the representation of women is not fair and reasonable in relation to the number of women in the community. Specifically, the 1970 census for Duval County shows that of 11,722 residents, 51% were women.[1] However, during the 14 years preceding appellant's indictment, *91%* of the grand jurors were men and 9% were women. Thus there is an absolute disparity of 42%.[2]

And, third, this noteworthy underrepresentation results from a suspect jury selection procedure. As the Supreme Court has pointed out, the Texas key-man system of grand jury selection is "susceptible of abuse as applied." *Castaneda,* supra, 430 U.S. at 497, 97 S.Ct. at 1282. The system is clearly abused when the disparity between women in the community and women represented on the grand juries is 42%. Such disparity could not be construed as an

2. In *Castaneda v. Partida,* supra, the absolute disparity was 39% over an 11 year period. Thus the above figures are more than adequate for establishment of a prima facie case.

accident, even in the wildest of imaginations.

Having made out a prima facie case, the question becomes: Does appellant, a male, have standing to protest the exclusion of women from grand juries? While he asserts equal protection, due process, and denial of a fair cross-section of the community, his standing to assert an equal protection claim is cloudy, at best. While *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 2166, 33 L.Ed.2d 83 (1972) did hold that "when a grand or petit jury has been selected on an impermissible basis, the existence of a constitutional violation does not depend on the circumstances of the person making the claim," it rested *not* on equal protection, but rather on the due process right to a competent and impartial tribunal.

Thus, while appellant does not have standing on equal protection grounds, he does have standing on due process grounds. And, as set forth in *Peters v. Kiff*, and *Taylor v. Louisiana*, supra, the gravamen of due process is that a fair cross-section of the community must be represented on grand juries: "If a state chooses, quite apart from constitutional compulsion, to use a grand or petit jury, due process imposes limitations on the composition of that jury." We have followed this stricture; see, e.g., *Espinoza v. State*, 604 S.W.2d 908 (Tex.Cr.App.1980). Moreover, the fair cross-section requirement is set out in Article 19.06, V.A.C.C.P.: "The commissioners shall, to the extent possible, select grand jurors who the commissioners determine represent a broad cross-section of the population of the county considering the factors of race, sex, and age."

There is, then, no question that under the teachings of the Supreme Court and our own Court that appellant has made out a prima facie case of grand jury discrimination. The court of appeals evaded this issue, and this Court follows their lead by summarily denying review. With deference, I believe this Court's denial springs from a disinclination to reverse and remand a conviction obtained after a fair trial. And indeed, this is understandable: even as we acknowledge the validity of appellant's prima facie case, what harm has been suffered by a defendant who has been found guilty beyond a reasonable doubt at a trial that was free from constitutional error?

*Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) and *Peters v. Kiff*, supra, addressed this issue, and they found:

"When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." 92 S.Ct. at 2169.

As the Supreme Court acknowledges, assessing harm or lack of harm is an impossible task. No one can speculate what action a constitutionally valid grand jury would have taken. We are, therefore, compelled to decide this case on the constitutional principles enunciated in *Castaneda v. Partida* and *Duren v. Mississippi*, supra. It is our duty to enforce vigilantly the United States and Texas Constitutions and uphold the integrity of the procedure by which we bring defendants to justice, but in haste to deny review and thereby uphold a conviction, we renounce this duty.

I, therefore, dissent to denial of petition for discretionary review.

MILLER, J., joins.