Charles D. BOŸD, Appellant,

v.

The STATE of Texas, Appellee.

No. 40485.

Court of Criminal Appeals of Texas.

July 12, 1967.

Rehearing Denied Nov. 15, 1967.

Charles W. Tessmer, Frank S. Wright, Dallas, for appellant.

Henry Wade, Dist. Atty., William F. Alexander, Tom Reese and Kerry P. Fitz-Gerald, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is kidnapping for the purpose of extortion; the punishment, 40 years.

The indictment alleged that appellant and Virgil Chester McIlvain did "unlawfully and forcibly detain, forcibly confine, forcibly conceal annd fraudulently entice away Robert Payne for the purpose and with the intent of taking, receiving, demanding and extorting from the said Robert Payne * * * valuable property, to wit fifteen thousand dollars ($15,000.00) current money of the United States of America."

Trial was before a jury under the 1965 Code of Criminal Procedure on a plea of not guilty.

The court's charge authorized a finding of guilty if the jury found from the evidence beyond a reasonable doubt that appellant "did unlawfully and forcibly detain, or forcibly confine, or forcibly conceal and fraudulently entice away Robert

Payne for the purpose and with the intent of taking or receiving, or demanding or extorting from the said Robert Payne * * * valuable property, to wit: fifteen thousand dollars * * * or any part thereof."

Appellant's first ground of error relates to his exception III to the court's charge which reads:

"Defendant excepts to Page One of the Court's charge, paragraph three in that it does not charge on the statute with reference to the allegations as set out in the Indictment and Defendant excepts that Page One and Two of the Court's charge to the Court's submitting that the theory that the Defendant may be convicted for forcibly concealing and fraudulently enticing away Robert Payne because there is no evidence to support same."

Ground of error No. 2 relates to Exception No. II to the court's charge and presents the alternative contention that the state failed to prove all of the descriptive allegations of the indictment as to the elements of the offense and how it may be committed, namely "did unlawfully and forcibly detain, or forcibly confine, or forcibly conceal and fraudulently entice away Robert Payne * * *."

Complainant Robert Payne, a practicing attorney, testified that appellant came to his office, situated on the same property where his farm home was located, and urged Payne to go with him to the scene of a fight that appellant had apparently had with another man the night before. After Payne refused to go, appellant drew a pistol from his pocket and ordered him to go. Payne drove appellant's car to a house where Virgil Chester McIlvain was staying. The three, with McIlvain driving, went to a farmhouse near the city of Plano owned by one Joe Hunter Harrington. Appellant told Payne, while outside the farmhouse, that he wanted $15,000 for the purpose of conducting a bookmaking operation in Collin

County (where Plano is located). Payne was taken into one room of the Harrington farmhouse while Harrington, McIlvain and appellant discussed bookmaking operations in another room.

Later, appellant, Payne and McIlvain left the farmhouse with McIlvain driving and appellant in the back, seated immediately behind Payne. During the return trip to Dallas appellant continually threatened Payne with his life unless he would give appellant $15,000. At one point during this trip appellant hit Payne on the head with a pistol which he had continuously kept in his hand.

The trio proceeded to one Peewee Karr's house where Payne was taken to a small building behind the house while McIlvain went to locate Karr. Appellant continued to demand the $15,000 and told Payne that he would kill him if he tried to leave, and pistol-whipped Payne on the head. When Karr arrived appellant told him that he was going to be given $15,000 by Payne. Appellant then had Payne call his bank and tell a Mrs. Scallorn that he wanted $15,000 cash prepared for him so he could come to the bank and pick it up.

Payne was then taken to a doctor's office where his wounds were dressed. After leaving the office Payne, McIlvain, Karr and appellant went to Payne's bank. Following a lengthy discussion with the bank officer concerning the manner in which the $15,000 would be handled (the problem being Karr not wanting to take cash because of present tax difficulties), a joint account with Payne and "P. W. Carr" was opened, financed by a check for $15,000 written by Payne on his personal account.

Karr drove Payne home from the bank and Payne filed a formal complaint the following morning.

The statute describing the offense of kidnapping for extortion (Art. 1177a P.C.) sets out in the disjunctive the means of committing the offense, and the court's charge was properly framed in the statutory

form. See 4 Branch's Ann.P.C.2d 247, Sec. 1926.1.

■ The framing of the indictment in the conjunctive was the proper method and did not require the state to prove each distinct element set out therein. Shook v. State, 156 Tex.Cr.R. 515, 244 S.W.2d 220; Odle v. State, 139 Tex.Cr.R. 288, 139 S.W.2d 595.

■ Further, we find the evidence, viewed from the standpoint of the state, sufficient to sustain a finding by the jury that Payne was not only forcibly detained and confined but was forcibly concealed and fraudulently enticed away by appellant.

■ Appellant's third point of error is the contention that the court erred in charging in the abstract on the law of principals but failing to apply that law to the facts. Appellant does not show that the charge in this regard was calculated to injure the rights of the accused. Lowe v. State, Tex.Cr.App., 377 S.W.2d 193; Bryant v. State, Tex.Cr.App., 397 S.W.2d 445.

■ Point of error number four concerns the requested instruction by appellant to the effect that he could not be convicted if his only intent was to obtain an account receipt and deposit slip representing a deposit of $15,000. Appellant argues that this was a defensive issue raised by the evidence and that he was entitled to an affirmative submission to the jury of this defense.

The court charged the jury as follows:

"You are further instructed that before you can convict the defendant of kidnapping for the purpose of extortion, if he did, you must further find and believe from the evidence beyond a reasonable doubt that at the time of the forcible detention, if any, or confinement, if any, or concealment, if any, and fraudulent enticement, if any, had the specific intent to extort $15,000 current money of the United States, or any part

thereof, and unless you do so find and believe or if you have a reasonable doubt thereof, then you will acquit the defendant and say by your verdict not guilty."

The quoted portion of the charge adequately protected appellant's interests insofar as his defensive issue was concerned. No error is perceived.

■ Appellant's fifth point of error presents the contention that the court should have instructed the jury that aggravated assault was not an element of the offense with which appellant was charged, and should have submitted the converse to the state's charge with respect thereto.

The testimony regarding the assault was used to prove up the crime for which appellant was on trial, and was not an extraneous offense. The failure of the court to charge the jury as suggested was not error.

■ Appellant next complains that the trial court erred in failing to allow a defense witness to testify in the presence of the jury to facts which impeached the testimony of the prosecuting witness Payne.

The testimony sought to be impeached was Payne's testimony elicited on cross-examination that he had never been to the Sahara Hotel with appellant to see colored prostitutes.

The trial court did not err in excluding testimony of a witness that she had seen Payne and thought he came to the Sahara Hotel often "to go to the rooms."

This testimony had nothing to do with the relationship between Robert Payne and appellant, and the trial court properly rejected it. Fleck v. State, Tex.Cr.App., 380 S.W.2d 621; Gatson v. State, Tex.Cr.App., 387 S.W.2d 65.

■ In his point of error number seven, appellant contends it was error for the trial court to refuse his request for a copy of grand jury testimony for the purpose of impeaching the testimony of the state's

witness Karr, after the prosecutor had referred to Karr's grand jury testimony during his interrogation.

The only use made by the prosecutor of such grand jury testimony was out of the presence of the jury. There is no showing that the prosecutor was displaying or using the grand jury testimony in the presence of the jury. No error is shown. Perdue v. State, 171 Tex.Cr.R. 332, 350 S.W.2d 203; Pendell v. State, 158 Tex.Cr.R. 119, 253 S.W.2d 426; Jackson v. State, 166 Tex. Cr.R. 348, 314 S.W.2d 987; Nisbet v. State, 170 Tex.Cr.R. 1, 336 S.W.2d 142.

Appellant's eighth ground of error seeks to invoke the rule that reversal results without any showing of injury for the denial of defendant's request or demand that he be permitted to inspect any document, instrument or statement which is used in some way before the jury by which its contents become an issue, such as exhibited or read or used to question the witness in the jury's presence. Sewell v. State, Tex.Cr.App., 367 S.W.2d 349; Walton v. State, Tex.Cr.App., 386 S.W.2d 805; Cook v. State, Tex.Cr.App., 388 S.W.2d 707, 708.

Appellant's brief states that defense counsel *requested a copy* of the grand jury testimony of the defense witness and co-indictee McIlwain. This statement is predicated upon the following which occurred on McIlwain's cross-examination.

"Q. All right. Payne said 'He is acting like a crazy man' that's true, isn't it?

A. I don't know if he said that or not.

Q. Well, that's what you testified to before the Grand Jury, didn't you?

A. Well, I don't recall if he said that or not. I didn't take every little word that was said.

Q. Didn't you tell me in the Grand Jury he said, 'He's acting like a crazy man?'

A. Did I say that he was acting like a crazy man, maybe Mr. Payne said it, I didn't say it.

Q. Do you remember that answer that you gave before the Grand Jury—

MR. WRIGHT: Now, Judge, I object to this flashing around this transcript unless I'm *going to be entitled to or given a copy of it.*

"THE COURT: Overruled.

MR. WRIGHT: Unless he lays a predicate, which he hasn't, he's flashing papers around as far as I can see.

THE COURT: He's got a right to interrogate the testimony (sic) and use the Grand Jury testimony.

MR. WRIGHT: I don't have any idea that that's what he's using."

We do not find in the objection quoted or elsewhere in the record any request or demand that appellant or his counsel be permitted to inspect the document, "papers," instrument or statement which counsel for the state was using in the cross-examination of the witness McIlvain.

■ The invocation of the rule that a defendant must be permitted to inspect any document, instrument or statement which is used before the jury by which its contents become an issue (such as using it to question the witness in the jury's presence) is conditioned on a timely request or demand by the defendant that he be permitted to inspect the document. Sewell v. State, Tex. Cr.App., 367 S.W.2d 349. No such timely request or demand is shown to have been made by appellant in the instant case. An objection "unless I'm going to be entitled to or given a copy of it," can hardly be construed as a request or demand to be permitted to inspect the transcript or document.

In his ninth point of error appellant complains of the admission of certain testimony of a state's witness containing hear-

say declarations made by the prosecuting witness.

On cross-examination of Peewee Karr, a state's witness, the following testimony was elicited by appellant's counsel:

"Q. All right. On the way home, I'll ask you if there was any conversation between the two of you making up some story to tell his wife about the cuts?

A. After he said, 'Oh, Boyd wants to to do some booking,' well I said, 'Bob what are you going to tell your wife, what are you going to tell your wife?' He says, 'I'm going to tell her that I was in wreck with you.'

Q. All right. *Did you, in fact, hear him tell her that when you got back to his house?*

A. When we got back to his house, to his office, we went in there and—

\* \* \* \* \* \*

A. Well, he asked me if that was all right if he said he was in a wreck and he was going to tell his wife—I says, 'What are you going to tell your wife?' and he said 'I have an idea.'

Q. What did he say?

A. 'I'm going to tell her I was in car wreck with you.'

Q. My question once again is, did you hear him tell his wife that?

A. I did."

On redirect examination of Karr the prosecution elicited the following testimony:

Q. Now, directing your attention to the afternoon after the kidnapping, after Payne had been sewed up, after you had been to the bank when you got into the office, counsel asked you some questions about your con-versation with Payne in the office. Now, after he told his wife that he had been in an automobile accident with you, tell us the rest of that conversation?

A. Well, Bob and I, he got a phone call or he made a phone call to some-body by the name of, a friend of his that runs a pawn shop or something and Bob started to—

\* \* \* \* \* \*

A. He got a call or made a call and he was talking to this party and he was telling—when he started talking to him he started telling about Boyd came out there that morning and how Boyd had made him leave the house with him and go up to Plano and then I was listening after he got through talking to him—I gave Bob, which I had a little card, which had a little account number on it—I remember she did give me the slip—and after I heard him talking to his friend, I gave him that little card and I said 'Bob, I don't want no part of this $15,000 and I damn sure can't withdraw any of it.' So his dad-dy-in-law came in and when his daddy-in-law came in then he ask-ed him what happened and he said, 'Well I had a wreck with Pewee in his wife's car' and I felt like I would leave and I went on home."

When part of the conversation in Payne's office was given in evidence by appellant, the whole of that conversation could be inquired into by the prosecution. Art. 38.24 C.C.P.; Harwell v. State, 156 Tex.Cr.R. 337, 242 S.W.2d 388.

In his tenth and final point of er-ror, appellant complains of the introduction into evidence of certain photographs of the complaining witness which were taken the day after the occurrence in question. It is contended that these photographs were inflammatory in nature and were admitted

solely for the purpose of inflaming the minds of the jury against appellant.

Reproductions of the photographs which are in the record show merely that Payne's face was bandaged and that his eye was injured. The photographs were not of an inflammatory nature and were properly admitted as relevant evidence. Young v. State, Tex.Cr.App., 398 S.W.2d 572.

The judgment is affirmed.