James Earl GILLIS, Appellant,

v.

The STATE of Texas, State.

No. 2-84-298-CR.

Court of Appeals of Texas, Fort Worth.

July 24, 1985.

246

Brantley Pringle, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., and Mary Thornton Taylor, Asst. Dist. Atty., Fort Worth, for State.

Before BURDOCK, HILL and HOPKINS, JJ.

## OPINION

HOPKINS, Justice.

This is an appeal of a conviction for aggravated sexual assault. Upon a plea of "not guilty", a jury found the defendant

"guilty" and assessed his punishment at 99 years confinement in the Texas Department of Corrections.

We affirm the judgment of the trial court.

The defendant's three grounds of error are: (1) the trial court erred in admitting evidence of telephone conversations between the victim and relatives of the defendant made after the date of the offense; (2) the trial court erred in permitting the State to read from a law book during final argument at the punishment phase; and (3) the evidence of defendant's identification was insufficient.

■ Over defendant's objection, the State was permitted to introduce evidence by the complaining witness that, while the case awaited trial, she received several telephone calls from persons identifying themselves as defendant's relatives asking her to drop the charges against defendant and that the calls were a factor in the witness changing residences.

■ The State contends the calls were admissible under TEX.CODE CRIM.PROC. ANN. art. 38.24 (Vernon 1979) which provides in part as follows:

> When part of an act, declaration or conversation or writing is given in evidence by one party, the whole *on the same subject* may be inquired into by the other, as when a letter is read, all letters *on the same subject* between the same parties may be given.... [Emphasis added.]

The State asserts the following questions by defense counsel and responses by the witness "opened the door" for the testimony elicited by the State. We disagree.

> Do you recall maybe having made a statement to somebody to the effect that you have a brother, or a relative, or a brother-in-law, something like that, who was six feet; and he was not as tall as that man?
>
> A. No, I don't recall.
>
> Q. To refresh your recollection, do you recall having received a telephone call from somebody, maybe it was some-

one perhaps who was—who claimed to be related to James Gillis?

> A. I received several telephone calls, but I don't recollect discussing....
>
> Q. Uh-huh.
>
> Did you—do you recall at that time that you affirmed, again, that your assailant was about five feet eleven?
>
> A. No.
>
> Q. Now, we're talking about a telephone call that was made to you at your home, sometime perhaps in the early part of June; is that correct?
>
> MR. GORDON: [Prosecutor] Your Honor, I'm going to object. This is improper impeachment. The question has been asked, the question has been answered. Further attempts by Counsel, to testify on behalf of this witness, are improper, if he's attempting to impeach her; and I believe he knows the proper procedure.
>
> THE COURT: What's your response to that, Counsel?
>
> MR. PRINGLE: [Defense Counsel] Well, I.. I can't impeach her unless she makes a denial of .. the conversation occurred. If she ..
>
> MR. GORDON: She's answered the question, to the best of her ability, Judge.
>
> MR. PRINGLE: Well, I .. I .. I have to.. I think, in order to make an impeachment lie, I have to recite fairly specifically when the conversation occurred, and what was said as .. I .. I .. I don't intend to sandbag, or mistreat Miss _____ at all, but I think ___
>
> THE COURT: Okay, proceed, but be mindful of the area of the objection, and we will protect that area.
>
> Go ahead.
>
> MR. PRINGLE: Yes, Your Honor.

BY MR. PRINGLE:

> Q. My question, Miss _____, was: Do you recall perhaps sometime after about the 2nd of June, and the early part of June of 1984 that you received a telephone call from somebody who identified

themself as being a relative of James Gillis?

A. Yes.

Q. And to refresh your recollection, did you make a statement to that party, to the effect, that the one that you identified in this testimony, as being Assailant No. 1, was about five feet eleven inches tall?

A. No, I did not.

Q. Do you recall having said in that telephone conversation to that person, whoever it was that called, that -- that you were sure that the Assailant No. 1, or your principal assailant, was less than six feet, because you had a brother who was about six feet, and he was shorter than that?

A. No.

Q. Do you have a brother who is about six feet tall?

A. Yes, I do.

Q. Is he precisely six feet tall?

A. I believe he's six-one.

Q. Six-one. I see.

Did you -- do you remember having talked to somebody whose name was Lillian Chiles (phonics), who identified herself perhaps as being Lillian Chiles (phonics)?

A. No.

Q. Do you remember having talked to someone who identified themselves as being the aunt named Lillian of James Earl Gillis?

A. I talked to the aunt, the grandmother, and the father, but they did not identify themselves by name.

Q. I see.

But you -- you do recall having talked to an aunt of ---

A. Yes ---

Q. --- James Earl Gillis?

A. Uh-huh.

On redirect by the State, the following appears in the record:

BY MS. PRESCOTT: [Prosecutor]

Q. Since Mr. Pringle has brought it up, Lenda, let's talk a little bit about some of those calls.

Tell the jury about the calls that you've received after you were raped.

A. The first one I received was, I think the Monday after I had come down for the line-up. It was his grandmother. She identified herself as his grandmother; and she said that some guy had called her and told her that her grandson didn't do this, that it was another man that did it; and I asked her what man? How would this man know me, and I don't know her grandson? She said that -- and I asked her who this person was, and she said ---

MR. PRINGLE: Your Honor, we'd object as to what the grandmother said. That is strictly hearsay.

MS. PRESCOTT: Your Honor, Mr. Pringle has gone into part of these conversations. I think the jury is entitled to know that the Defendant's family started calling her.

THE COURT: Just a minute.

(Pause in the proceedings.)

THE COURT: All right, overruled. Proceed, Counsel.

\* \* \* \* \* \*

BY MS. PRESCOTT:

Q. Lenda, did -- let me ask it this way. Were they trying to discourage you from continuing prosecution ---

\* \* \* \* \* \*

Q. All right, Lenda, let's go back to the calls for a minute.

Did you receive any phone calls from people identifying themselves as a member of the Defendant's family?

A. Yes.

Q. Were these phone calls one, or several or many?

A. Several.

Q. And what -- without going in specific conversations, what was the general nature of these calls?

A. They wanted me to drop the charges. And they tried to make me a bad person. That if this happened to me, that --- and that their grand [sic] -- her grandson didn't do it. It was my fault.

Q. And did you ask them to stop making these calls?

A. Yes, I did.

Q. Did they?

A. No.

Q. What did you finally have to do?

A. I called Detective Kratz, and told him that they were calling me. He asked me for names. I told him they didn't give me any names, they just identified as aunt, and grandmother, whatever.

Q. And did __ can you tell the jury whether or not this was a factor in your decision to have to move?

A. Yes.

MR. PRINGLE: Now, Your Honor, our __ our objection, I take it, goes to all of this information, all this testimony?

THE COURT: Okay. It's overruled. It is apparent the information elicited by the State was not on the same subject as that attempted to be elicited by the defendant. The purpose of art. 38.24 is to minimize the possibility of the jury receiving a false impression from hearing only a portion of a conversation, writing or act. *See Roman v. State*, 503 S.W.2d 252, 253 (Tex. Crim.App.1974). The State contends that the dialogue between the defendant's counsel and the victim, if unanswered, would cause the jury to believe the witness voluntarily discussed the case with several relatives of defendant. We question the merit of this argument, but assuming arguendo it did cause such impression, we fail to perceive how such impression would be harmful to the State's case. We must now consider whether the error of admitting the hearsay testimony of telephone calls after the crime constitutes reversible error.

There was no showing that the defendant planned, requested or participated in the telephone calls in any manner whatsoever. Under the facts of this case, we hold the State's case would not have been significantly less persuasive had the error not been committed and therefore the error

was harmless. *Hawkins v. State*, 613 S.W.2d 720, 730 (Tex.Crim.App.1981). Defendant's first ground of error is overruled.

 In his second ground of error defendant complains of the State reading from a law book during final argument. The State contends its argument was in rebuttal of argument by defense counsel. The record shows that the following occurred during the State's closing argument on punishment.

Now, Mr. Pringle has said a lot of things in this trial. He's made a lot of comments about the State. He's tried to imply that there is some type of a racial issue, that somehow that we have something personal against this Defendant. The *Code of Criminal Procedure*, in talking about the duty of prosecutors ___

MR. PRINGLE: Now, Your Honor, we'd object to her reading from the *Code of Criminal Procedure*. They will receive the law from the Court. This is highly inappropriate.

THE COURT: She can proceed, as long as she states the law correctly.

MR. PRINGLE: I thought I __ I __ I was not aware of the fact that either of us could make statements of what the law is, or ought to be.

MR. GORDON: As proper answer to Counsel's arguments outside the record, Judge.

THE COURT: We'll overrule it at this point.

MR. PRINGLE: Note our exception.

THE COURT: You may raise it if __ if she deviates.

MS. PRESCOTT: It shall be the primary duty of all prosecuting attorneys, including special prosecutors, not to convict, but to see that justice is done.[1] That is a very serious duty. And we are officers of this Court, and I stand before you now asking you to do justice in this case.

---

1. TEX.CODE CRIM.PROC.ANN. art. 2.01 (Vernon Supp.1985) provides in part: "It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done...."

MR. PRINGLE: Your Honor, I object. I .. this is highly improper. She has read a portion of the law, and then proclaimed her own virtue in following it. This is .. this is not proper argument before a jury. This is way outside the record. I move that the Court instruct the jury not to consider such far-fetched, far-out statements as being pertinent to this cause.

THE COURT: Overruled.

The State contends it was responding to defendant's argument including the following:

[Guilt Phase]

We don't have to look very far to recognize a situation .. the injustice of a situation where a Defendant is improperly identified, and prosecution is zealously pursued to convict the innocent. And I submit to you, this is that kind of a case....

\* \* \* \* \* \*

She [victim] sat here on the stand, she said, I'll never forget him. I'd know him anywhere. He's the one. And I'll never remember the other three. I submit to you, has she been coached?

\* \* \* \* \* \*

We brought to you .. the State didn't bring to you .. we brought to you the stipulation that's in evidence, to the effect that they lifted fingerprints off of the inside of this window (indicating), where the assailant is presumed to have admitted his confederates. And they studied and classified those prints, and they do not bear any relationship to the prints of Bud here....

[Punishment Phase]

I think .. I think it's fairly apparent to you that the State has vigorously pursued an attempt to punish this Defendant.

They have brought up before you three State employees, check me out on this, the first of whom was frank and honest. He didn't like James. And naturally, his reputation was bad. I had a lot of trouble trying to get the answer to a simple question that really is a yes or no, or even a maybe, but I couldn't get an answer very readily out of the other two witnesses that the State called, who were also State employees. This is what gives me trouble about this kind of a case. The State is so much in charge of the prosecution of the case like this, with all of their resources, with all their investigators, with all their means and laboratories, and instruments, they bring up three of their own up here to prop up their own case. A probation employee, I suppose, of the Juvenile Probation Department, a police officer of the City of Fort Worth, a parole officer from the Juvenile Probation Department.

As y'all view the facts of this case, you also have to look at all that was proved upon the trial, where James Earl Gillis lived down there on East Harvey, just off Evans Avenue. The kind of a relationship that the people in that community have with the police department. This is a matter that, I think, concerns all of us. The way in which maybe our public departments treat minority races.

MR. GORDON: Judge, I'm going to object to any interjection of any kind of race into this. There has been nothing like that. I feel like that is far and way outside the bounds of propriety, and I strenuously object.

THE COURT: Counsel, kind of stay within the record ---

MR. PRINGLE: Yes, Your Honor.

THE COURT: --- and the evidence we have ---

MR. PRINGLE: I .. I .. it's been ---

THE COURT: --- and reasonable deductions from it.

Please proceed.

MR. PRINGLE: The record has shown that this boy is black. The evidence shows that white officers went down into the black community where he lived with guns drawn. That he sought refuge under the house. I .. I think it's not far-fetched to realize that in his community, there is a fear of the police authority, and they bring the police authority up

here now to convince you that James is bad news....

The permissible scope of jury argument includes answers to argument of opposing counsel as well as the summation of evidence, reasonable inferences from the evidence and pleas for law enforcement. *Darden v. State,* 629 S.W.2d 46, 52 (Tex. Crim.App.1982). If the argument is invited, then it is not improper and therefore does not constitute error. *Jones v. State,* 582 S.W.2d 129, 135 (Tex.Crim.App.1979). Error in argument does not lie in going beyond the court's charge but in stating law contrary to that contained in the charge. *Maudlin v. State,* 628 S.W.2d 793, 795 (Tex.Crim.App.1982). In this case the State's argument was not an incorrect statement of the law and was not contrary to any provision of the court's charge. Though counsel's reading from law books during trial was improper, we hold that the State was entitled to respond to the inferences by defendant that the prosecution of defendant may have been racially motivated, that the State had coached a witness, and that the State was zealously seeking a conviction without regard to the rights of the accused. *See Lewis v. State,* 676 S.W.2d 136, 142–43 (Tex.Crim.App.1984); *Burns v. State,* 556 S.W.2d 270, 285 (Tex. Crim.App.1977); *Jones v. State,* 520 S.W.2d 755, 756–58 (Tex.Crim.App.1975).

■ The defendant further suggests that the argument constituted reversible error in light of the 99 year sentence imposed by the jury. We disagree. The evidence established that the defendant broke into the victim's home and committed an act of sexual assault at gunpoint. He then opened a window to admit three other assailants and stood by while the victim was sexually assaulted by them and then he raped the victim a second time. There was also evidence of defendant's bad reputation as a law-abiding citizen. We hold the evidence and circumstances of the crime were sufficient to support and justify the sentence imposed and that there was little likelihood the severity of the punishment was influenced by the State reading from the law book. For a jury argument to constitute reversible error, it must be manifestly improper, violate some mandatory statute or inject some new fact into the case that is harmful to the defendant's cause. *Mathews v. State,* 635 S.W.2d 532, 539 (Tex.Crim.App.1982). The argument complained of was not violative of this rule. Defendant's second ground of error is overruled.

■ Defendant's third ground of error asserts he was entitled to an acquittal because the evidence of his identification was insufficient. We disagree.

The defendant contends that there was poor lighting, that there was disparity between his actual height and the victim's estimate of his height, and that the victim was unable to describe the physical characteristics of her other three assailants.

The victim made an in-court identification of the defendant as being the first of four assailants and the only one armed with a pistol. Further, that the bedroom was illuminated by a television being on and from a light shining into the bedroom from a vent-a-hood in the kitchen. She also described how all four of her assailants were dressed, defendant's physical appearance, and the weapon used in committing the offense. She said she heard giggling outside her window and a voice saying, "say, James, open the window, man". She estimated defendant's height at "about five-eleven", while defendant testified he was "six-three". The defendant also testified he was not dressed as the victim described, that he did not rape her, had not been in her home and had never even seen the victim prior to trial. He denied owning a gun and presented alibi witnesses.

It is axiomatic that the jury is the exclusive judge of the facts, the credibility of the witnesses and the weight to be given their testimony. From the verdict, it appears the jury chose to believe the victim's testimony of identification rather than the testimony of the defendant and his witnesses. Defendant's third ground of error is overruled.

The judgment of the trial court is affirmed.

HILL, Justice, dissenting.

I respectfully dissent. The majority states that the error in allowing the State to present evidence of harassing calls made by Gillis's family to the complainant was harmless error.

Error in the admission of evidence is not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Johnson v. State,* 660 S.W.2d 536 (Tex.Crim.App.1983); *Clemons v. State,* 605 S.W.2d 567 (Tex.Crim.App.1980).

In this case, the question of identification was hotly contested. The complainant identified Gillis as her assailant, expressing no doubt or hesitancy about the identification. She had not known Gillis prior to this incident and her identification was based on a view lasting five or ten seconds in dim light. There was no other evidence tending to connect Gillis with the attack on the complainant, except that other participants in the offense called the attacker "James". Gillis presented several witnesses who testified that all of his friends called him "Bud" or "Bug" and never referred to him as "James". It was stipulated that fingerprints found at the scene were not those of Gillis. Gillis and two companions testified that he was elsewhere at the time of the attack. His mother corroborated their story to the extent of her personal knowledge.

Although there was no testimony showing Gillis was responsible for the telephone calls, the nature of the calls would tend to evoke sympathy for the complainant and negative feelings toward the Gillis family. In view of the closely contested nature of the trial, I would hold that there is at least a reasonable possibility that the admission of the harassing phone calls might have contributed to Gillis's conviction.

I would sustain Gillis's first ground of error and reverse the conviction and remand for a new trial.