**Gustavo PIMENTEL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–84–00320–CR.**

Court of Appeals of Texas,
San Antonio.

May 21, 1986.

Mark Stevens, Alan Brown, San Antonio, for appellant.

Sam Millsap, Jr., Raymond Fuchs, Eduardo Garcia, Daniel Thornberry, Crim. Dist. Attys., San Antonio, for appellee.

Before BUTTS, CANTU and TIJERINA, JJ.

CANTU, Justice.

This is an appeal from a conviction for murder. TEX.PENAL CODE ANN. § 19.-02 (Vernon Supp.1986). Appellant was indicted for capital murder, but was found guilty of the lesser offense of murder. The jury assessed punishment at 80 years' confinement.

Appellant's first five grounds of error complain of actions by the trial court in overruling his special requested instructions on lesser included offenses. The jury was charged on capital murder, murder, voluntary manslaughter, transferred intent and self defense. Appellant requested instructions on aggravated assault by causing serious bodily injury, aggravated assault by a deadly weapon, involuntary manslaughter, criminally negligent homicide, and reckless conduct, all of which were denied.

The evidence at trial established that at approximately 11:00 p.m. on the evening of December 23, 1983, the appellant shot officer Gilbert Ramirez of the San Antonio Police Department. Officer Ramirez died a short time later. Testimony concerning the events leading up to Ramirez' death established that earlier in the evening of the shooting, appellant and his nephew, Tony Vicenzio, had attended a Christmas party where appellant was drinking. The two men returned to Vicenzio's home where they began to argue. The argument developed into a physical fight, which ended when another relative, Juan Guzman, got involved by allegedly kicking appellant and firing a .25 caliber pistol into the air.

According to the testimony at trial, appellant, angry at Guzman for kicking him, left the Vicenzio home vowing to return "and get even." Appellant went to his own house two doors down, and loaded his shotgun. He then returned to the Vicenzio home and began kicking on the door. Other relatives at the Vincenzio home warned appellant that the police had been called and told him to go home. Appellant returned to his own home, after again vowing to get even.

Isidro Puente, a friend of appellant, was present at appellant's home. Puente testified that appellant returned home and unloaded his shotgun. Appellant then apparently saw car lights in the Vicenzio driveway. He reloaded the shotgun, and ran towards the Vicenzio home shouting "Well, I ain't going to hurt nobody, I am just going to shoot at the house." Puentes stated that appellant appeared very angry and upset.

Joe and Dora Cantu were visiting at the Vicenzio home. After the police had been called they attempted to leave. The Cantus saw the police cars arrive so they parked their truck partially in the street between the appellant's house and the police cars. The police vehicles were marked as such, but only their parking lights were on.

According to the testimony of officer Richard Sanchez, one of the San Antonio Police Department members to first respond to the call to the Vicenzio home, officer Ramirez arrived on the scene first. When Sanchez arrived Ramirez was talking to the Cantus next to their truck. Somebody shouted, "Here he comes." Sanchez observed appellant running down the street carrying a rifle. Sanchez and Ramirez ran for cover behind the truck; officer Ramirez ran to the back left of the vehicle. Ramirez identified himself as a police officer, and shouted at appellant to drop the gun. According to Sanchez, neither he nor Ramirez fired their weapons, but appellant fired twice, the second shot striking Ramirez in the neck. Ramirez returned fire at the same time appellant fired his second shot. Appellant continued running down the street. Sanchez fired several times at appellant, and then called for medical assistance for Ramirez.

Several more officers arrived in the area, and began searching for appellant with dogs. Appellant was apprehended nearby, and the shotgun located shortly thereafter under some bushes near a neighbor's house, where appellant indicated he had put it.

Appellant testified on his own behalf at trial. According to his version of the facts appellant grabbed his shotgun and ran towards the Vicenzio house intending to shoot at the Cantus' truck. Appellant stated that he did not see the police cars, but thought that the parking lights were those of a car belonging to another relative. He also testified that he did not hear the police identify themselves.

According to his testimony, appellant was aware that Guzman had a gun earlier in the evening. He therefore maintained that he was afraid when he returned to the Vicenzio home. Appellant claimed that when he got close to the Cantu's truck someone fired at him. Appellant testified that his gun just went off, stating:

... and all of a sudden I just, maybe I went down and fired, but at the same time I got scared. I got real scared, and I didn't know who was shooting at me. I just continued jogging, jogging all the

way here and firing. I don't know, maybe I load again and fired again. I don't remember. And I just continued running and I hear some shots after me. And I continue jogging all the way through here. They fired at me at close range right here. And all the sudden I might have went down, I don't know. I got scared and it just went off. I had my finger on my trigger, and it just went off. And I continued jogging and I might did fire again, I don't remember.

When appellant was later apprehended, he asked the officers "Did I get my brother-in-law?" According to testimony at trial, when appellant was told he had injured a police officer, he "had a look of surprise to him."

Appellant's first two grounds of error complain of the trial court's refusal to submit to the jury his requested instructions on aggravated assault by causing serious bodily injury and aggravated assault by deadly weapon as lesser included offenses.

In addition to capital murder, the trial court charged the jury on the lesser included offenses of murder and voluntary manslaughter, as well as on the law of transferred intent and self defense. The trial court, however, refused to submit instructions on involuntary manslaughter, criminally negligent homicide, aggravated assault by serious bodily injury, aggravated assault by deadly weapon and reckless conduct as lesser included offenses.

Appellant argues on appeal that in spite of his admissions that he shot officer Ramirez, his repeated denials that he intended to kill or shoot Ramirez or anyone else suffice to raise aggravated assault as a lesser included offense.

Texas Penal Code section 22.01 provides in pertinent part:

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; ...

Texas Penal Code section 22.02 provides in pertinent part:

(a) A person commits an offense if the person commits assault as defined in Section 22.01 of this code and the person:

(1) causes serious bodily injury to another, including the person's spouse;

\* \* \* \* \* \*

(4) uses a deadly weapon.

■ Appellant submitted a specially requested instruction on aggravated assault by causing serious bodily injury of which the following paragraph represents the application of the law to the facts.

Now if you find from the evidence beyond a reasonable doubt that on or about the 24th day of December 1983, in the County of Bexar, State of Texas, the Defendant Gustasvo Pimentel, did intentionally or knowingly or recklessly commit an assault on Gilbert Esquivel Ramirez by use of a .deadly weapon, to wit, by shooting him with a gun, and thereby inflict bodily injury upon him, as alleged in the indictment, you will find the defendant guilty of aggravated assault as charged in the indictment. . . .

We note that the requested instruction incorrectly purports to charge on aggravated assault as "charged in the indictment." If aggravated assault was in the case it was as a lesser included offense of capital murder and not by virtue of being the subject of the indictment.

■ More crucially, we think, the requested instruction would have permitted the jury to convict for the offense of aggravated assault under § 22.01(a)(1) without a finding that the bodily injury inflicted was serious. A trial court may refuse a requested instruction when it incorrectly states the applicable law. *Goldman v. State*, 143 Tex.Cr.R. 603, 160 S.W.2d 523 (1942); *Mutscher v. State*, 514 S.W.2d 905 (Tex.Crim.App.1974).

Ground of error number one is overruled.

Appellant's requested instruction on aggravated assault by deadly weapon was submitted in correct form but nevertheless overruled.

In order for a lesser included offense charge to be submitted, the lesser included offense must be within the proof of the offense actually charged and there must be evidence that if the defendant is guilty, he is guilty only of the lesser offense. *Moreno v. State*, 702 S.W.2d 636 (Tex.Crim.App.1986) (en banc); *Aguilar v. State*, 682 S.W.2d 556 (Tex.Crim.App.1985) (en banc); *Royster v. State*, 622 S.W.2d 442 (Tex.Crim.App.1981).

Appellant argues that his testimony that he intended to shoot at the truck or the house raises evidence of guilt of aggravated assault only. He further relies on the recent line of cases holding that use of a deadly weapon per se does not preclude the granting of an instruction on aggravated assault. *See Harrell v. State*, 659 S.W.2d 825 (Tex.Crim.App.1983) (en banc); *Castillo v. State*, 686 S.W.2d 377 (Tex.App.—San Antonio 1985, no pet.).

While we agree that an instruction on aggravated assault can no longer be withheld because a deadly weapon per se is used, we are not prepared to say that an instruction is mandated where the evidence fails to suggest that appellant, if guilty, is guilty only of aggravated assault. That is, while the instruction can no longer be denied because a deadly weapon per se is used, still, there must be evidence to warrant submission of the instruction initially.

Moreover if the evidence presents only the alternatives of convicting appellant of the offense charged or of acquittal, he is not entitled to a charge on a lesser included offense. *See Rogers v. State*, 687 S.W.2d 337 (Tex.Crim.App.1985) (en banc).

Our previous examination of appellant's testimony discloses that he fired either in self defense or that the firing was a voluntary act. In either case, appellant, if believed, would be entitled to acquittal and not to conviction of a lesser included offense. *See Simpkins v. State*, 590 S.W.2d 129 (Tex.Crim.App.1979); *Cato v. State*, 534 S.W.2d 135 (Tex.Crim.App.1976); *Smith v. State*, 411 S.W.2d 548 (Tex.Crim.

App.1967); *Sanchez v. State*, 691 S.W.2d 797 (Tex.App.—El Paso 1985, pet. granted).

Since the evidence did not raise the issue that appellant was guilty only of aggravated assault, it was not error to refuse a charge on that offense. Appellant's ground of error number two is overruled.

Appellant's third ground of error complains of the trial court's refusal to instruct on involuntary manslaughter as a lesser included offense.

Involuntary manslaughter occurs when one recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.05(a)(1); *Moore v. State*, 574 S.W.2d 122 (Tex.Crim.App.1978). One acts recklessly when he "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE ANN. § 6.03(c); *Dillon v. State*, 574 S.W.2d 92 (Tex.Crim.App.1978).

Since involuntary manslaughter requires a lesser culpable mental state on the part of the actor, it is by definition a lesser included offense of murder and of voluntary manslaughter. *Brooks v. State*, 548 S.W.2d 680 (Tex.Crim.App.1977).

According to appellant he was entitled to a charge on involuntary manslaughter because of his denial of an intent to kill anyone. He also points to testimony in the record where he evinced an earlier intent to shoot at a truck at a time when he was drunk. He further points to testimony placing him running down the street carrying a loaded, chambered, 12 gauge shotgun with his finger on the trigger and to testimony painting him as an avid hunter, knowledgeable in the use of firearms and, therefore, presumably aware of the risk of injury or death inherent in running down a street with his finger on a loaded, chambered, 12 gauge shotgun.

We note immediately that appellant's testimony was not that he fired at the truck but that he declared his intention to do so earlier. Reliance upon *Salinas v. State*, 644 S.W.2d 744 (Tex.Crim.App.1983) we believe is misplaced. In *Salinas* the appel-

lant testified that he was not pointing the gun at anyone at the time it accidentally discharged and that he was not aware that the deceased had been shot.

The following excerpt represents appellant's defensive position:

On direct examination:

\* \* \* \* \* \*

Q: Then why did you get your gun and go back out?

A: Because I was really mad and I told my wife that I was going to shoot Dora's truck. Because when I went to Esperanza's house the first time I heard Dora inside calling me lots of things, bad words and hollering this and that. And it got me more angry. And I told my wife that I was going to shoot Dora's truck.

\* \* \* \* \* \*

A: I was walking through the street jogging all through here. When I got approaching the truck they fired at me.

Q: Show us, show me how you were holding the gun. Let that be the gun.

A: Like that, with my finger on the trigger.

Q: Uh-huh.

A: I was walking through here, pointing up. It was too dark, I didn't see nobody.

\* \* \* \* \* \*

A: Okay. I came out of my house, out of the driveway. I was mad and crying. And—what they did to me. I had my .12 gauge pointing up like that. And when I approached, about right here, they fired at me from close range. And all of the sudden I just, maybe I went down and fired, but at the same time I got scared. I got real scared, I didn't know who was shooting at me.

I just continued jogging, jogging all the way here and firing. I don't know, maybe I load again and fired again. I don't remember.

Q: Okay.

A: And I just continued running and I hear some shots after me. And I continued jogging all the way through here. They fired at me at close range right here. And all of the sudden I might have went down, I don't know. And I got scared and it just went off. I had my finger on my trigger, it just went off. And I continued jogging and I might did fire again, I don't remember.

\* \* \* \* \* \*

A: I thought—I thought all of this time, I thought—when they fired at me I thought it was Juan and Tony that fired at me because they took a gun out earlier.

\* \* \* \* \* \*

Q: Did you know you were shooting at any police officers?

A: No, sir.

Q: Okay. Who did you think, in your mind, was back there?

A: I thought it was Tony and Juan that was shooting at me.

\* \* \* \* \* \*

A: They fired at me. I continued jogging and then I did fire again, I remember. And I hear some shots that was fired at me.

\* \* \* \* \* \*

A: Well, like I say, I fired and I might did fired again. And I raised my hands, jogging all the way. And when I approached the second car I saw a sign that said police.

\* \* \* \* \* \*

On cross examination:

Q: Okay. Then you decided then and there well you are going to have to go down there and start shooting the place up, right?

A: I told my wife I was going to go out and shoot Dora's truck.

\* \* \* \* \* \*

A: Yes, sir; I went home.

Q: And you loaded it back up?

A: Yes, sir.

Q: And put three of them in it again?

A: I don't know if there were three or two. I don't know.

Q: You know you put at least two in there, don't you, Gus?

A: Yes, sir.

Q: I mean, because you fired the gun twice, right?

A: I fired one shot and I don't know, maybe it came off. I don't know.

Q: Well, you know one shot hit the truck and one shot hit Gilbert Ramirez, you know that now, don't you?

A: I know now; yes, sir.

Q: Okay. So you know you fired that shotgun twice, right?

A: That is what they say.

\* \* \* \* \* \*

A: I was jogging with my finger on the chamber.

Q: When did you lower it down?

A: When I heard my first shot at close range. I got scared and I went down and my gun just went off.

\* \* \* \* \* \*

Q: ... Now, that is not an automatic shotgun, is it?

A: No, sir.

Q: For you to shoot it more than one time you have to chamber another shell?

A: Sir?

Q: If you shoot that shotgun once, for you to shoot it again you have to chamber another shell right?

A: Yes, sir.

Q: You have to pump it?

A: Yes, sir.

\* \* \* \* \* \*

We conclude that the evidence raised by appellant through his defensive testimony did not establish that he was aware of an unjustifiable risk and nevertheless consciously disregarded the risk, that is, the pointing and shooting the shotgun at the truck. Moreover, there is no evidence that appellant, if guilty, is guilty only of involuntary manslaughter.

■ The trial court did not err in refusing to charge on involuntary manslaughter as a lesser included offense. Appellant's third ground of error is overruled.

Appellant's ground of error number four complains of the trial court's refusal to charge the jury on criminally negligent homicide as a lesser included offense. His ground of error number five complains of the trial court's refusal to charge on reckless conduct.

A person commits an offense if he causes the death of an individual by criminal negligence. TEX. PENAL CODE ANN. § 19.-07(a).

TEX.PENAL CODE ANN. § 6.03(d) provides:

(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

■ The essence of the offense of negligent homicide is that an intentional act produced an unintended result. *Esparza v. State*, 520 S.W.2d 891 (Tex.Crim.App.1975).

As mentioned earlier the evidence raised the issue that the appellant was guilty only of a specie of murder or of no offense at all. Only the element raising murder to capital murder was seriously in dispute as was appellant's intent to commit any offense at all. Thus, under the instructions to the jury, appellant was entitled to an acquittal or conviction of murder or capital murder.

While it may be conceded that lesser included offenses were within the proof of murder and capital murder, there was no testimony that appellant if guilty at all, was guilty only of a lesser offense included in the greater offense charged. *See Bravo*

*v. State,* 627 S.W.2d 152 (Tex.Crim.App. 1982) (en banc); *Daywood v. State,* 157 Tex.Cr.R. 266, 248 S.W.2d 479 (1952).

■ Appellant was not entitled to a charge on criminally negligent homicide. For the same reasons he was not entitled to a charge on the misdemeanor offense of reckless conduct. Appellant's fourth and fifth grounds of error are overruled.

Ground of error number six complains of the trial court's refusal to submit appellant's requested charge on the voluntariness of his conduct.

Appellant requested the following instruction be submitted to the jury:

You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, an omission or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct. Now, if you believe from the evidence beyond a reasonable doubt that the Defendant killed the deceased by shooting him with a gun, but if you further believe from the evidence, or have a reasonable doubt that the shooting was by the accidental discharge of a shotgun in the hands of Defendant, then the Defendant would be 'not guilty.'

TEX.PENAL CODE ANN. § 6.01(a) provides:

A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession.

In arguing for the giving of the requested instruction appellant relies solely upon his testimony that he did not intend to shoot anyone and that the gun "just went off."

We are not directed to any evidence in the record supporting the proposition that *the act of shooting* was involuntary.

■ A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief.

■ The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge. *Warren v. State,* 565 S.W.2d 931 (Tex.Crim.App.1978).

In *Williams v. State,* 630 S.W.2d 640, 644 (Tex.Crim.App.1982) (en banc) the Court of Criminal Appeals announced that "[T]here is no law and defense of accident in the present penal code." It, however, recognized that accident would now be covered by a charge that a jury may acquit if there is a reasonable doubt as to whether the defendant voluntarily engaged in the conduct of which he is accused.

■ Therefore, it appears that no error occurs in denying a charge on involuntary conduct where the *evidence* does not raise involuntariness but merely reiterates the defendant's position that he did not intend the resulting injuries. *Williams v. State, supra; George v. State,* 681 S.W.2d 43 (Tex.Crim.App.1984) (en banc).

■ Appellant admits to obtaining the shotgun, loading it with the purported intent to fire it, jogging down a dark street with his finger on the trigger and discharging the weapon. The fact that the shotgun "just went off" does not render the act involuntary so as to require a charge thereon. As recognized in *George v. State, supra,* the appellant voluntarily engaged in conduct up to the very second when he claims the shotgun "just went off." *See also Dockery v. State,* 542 S.W.2d 644 (Tex.Crim.App.1975).

Appellant relies on this Court's opinions in *Joiner v. State,* 696 S.W.2d 68 (Tex.App.—San Antonio 1985, pet. pending) and *Whitehead v. State,* 696 S.W.2d 221 (Tex.App.—San Antonio 1985, pet. pending) pointing out the similarities between the requested charges in those cases and in the instant case.

We perceive the holding in *Joiner v. State* to possibly be erroneous inasmuch as the evidence of involuntary conduct is limited to a bare assertion that the shooting was accidental without evidentiary support for such assertion. Under the holding in

*George v. State, supra,* we are compelled to conclude that *Joiner* gives appellant no support for his argument.

*Whitehead,* on the other hand, discloses that the shooting was precipitated by another individual and that a question of involuntariness was legitimately raised for jury resolution. *Cf. Garcia v. State,* 605 S.W.2d 565 (Tex.Crim.App.1980).

Under the circumstances shown by the evidence appellant was not entitled to a jury instruction on the voluntariness of his conduct and the trial court did not, therefore, err in declining to include it in its charge to the jury. *George v. State, supra.* Ground of error six is overruled.

Appellant next complains of the trial court's overruling his motion for mistrial urged after the prosecutor injected new and harmful facts, unsupported by the evidence, to wit: that he "could have brought in the entire San Antonio Police Department to tell you that Gus Pimentel has a bad reputation."

Appellant called seven witnesses at the guilt/innocence phase, and five more at punishment to testify that he had a good reputation for truth and veracity, and for being a peaceful and law abiding citizen.

The State, in contrast, offered no character witnesses of its own and no evidence at all at the punishment phase. During summation at the punishment phase, appellant's lawyers pointed out the State's failure to offer any reputation testimony.

The following then transpired:

State's Attorney: The evidence of the trial of this case is before you right now as well as the evidence of Gus Pimentel's friends who have come in here and testified in his behalf. The defense attorney has told you that we can bring in people to say he had a bad reputation if we want to. I am sure I could have brought in the entire San Antonio Police Department to tell you that Gus Pimentel has a bad reputation.

Defense Attorney: I will object to that. That is a misstatement of the law. He is stating a personal opinion. If he could have done it he should have done it.

THE COURT: I will sustain the objection to that type of argument.

Defense Attorney: Will the jury be instructed to disregard that?

THE COURT: I will instruct the jury the statements of counsel are not evidence. They are to assist you if they can in arriving at an appropriate conclusion based upon the evidence. Arguments of counsel on either side do not constitute evidence.

Defense Attorney: Your Honor, as we are required to do now we'll ask for mistrial.

THE COURT: Denied.

Proper jury argument must fall within one of four general areas: summation of the evidence; reasonable deduction from the evidence; answer to argument of opposing counsel; and pleas for law enforcement. *Franklin v. State,* 693 S.W.2d 420 (Tex.Crim.App.1985) (en banc).

Appellant argues that the State's assertion that it could have brought in the entire San Antonio Police Department to tell the jury that appellant has a bad reputation does not fall within the permissible areas of argument under *Franklin, supra. See also Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973).

Appellant acknowledges that an instruction by the court to disregard improper argument usually cures any error raised by prosecutorial misconduct. Nevertheless, he urges that certain types of error in arguments are incapable of being cured by an instruction to disregard. The rule has been stated that prompt action of a trial judge in directing the jury to disregard improper argument will obviate a reversal except in extreme cases where the argument injected new facts of an obviously harmful nature, or where the language was so inflammatory in character that its harmful effect could not be remedied by withdrawal. *Galloway v. State,* 95 Tex.Cr.R. 9, 252 S.W. 516 (1923).

The State, on the other hand, insists that the argument was invited by appellant's own argument and points to the following excerpt:

They can bring in he has bad character. They can bring in people that will controvert that, people that will say the opposite. And, I don't know, to me, right now, as I told you on your last verdict, the spirit of the law is more important than the letter of the law. And the spirit of the law they can bring in people to show he has bad character, when Gus Pimentel's brings in people to say that his character is good for being peaceful and law abiding. To me those are important things. Those are positive things. . . .

The State in support of its position relies on *Franklin v. State, supra; Gillis v. State*, 694 S.W.2d 245 (Tex.App.—Fort Worth 1985, no pet.); *Durant v. State*, 688 S.W.2d 265 (Tex.App.—Fort Worth, 1985, pet. ref'd). None of these cases support the State's contention that the instant argument was invited.

 We believe, as did the trial court that the argument was improper. The question we must answer is whether the court's instruction to disregard cured the prejudicial effect.

In *McNaulty v. State*, 138 Tex.Cr.R. 317, 135 S.W.2d 987 (1939) the prosecution argued over objection, "we could have put on many more witnesses that would have testified to the same facts that the witness testified to that we did not put on." The Court of Criminal Appeals recognized that such an assertion could not be cured by the charge of the court. A reversal was ordered.

In *Johnson v. State*, 649 S.W.2d 111 (Tex.App.—San Antonio 1983), *aff'd*, 662 S.W.2d 368 (Tex.Crim.App.1984) (en banc) the prosecutor argued that there were other witnesses who were adverse to the defendant, but who had not testified. In holding that the argument was not invited and not within the record this court reversed, holding that it was improper for a prosecutor to imply to the jury that there is

pertinent evidence of which he is aware that is not in the record. *See also Dowd v. State*, 104 Tex.Cr.R. 480, 284 S.W. 592 (1926) wherein it was held reversible error for the prosecutor to apologize to the deceased's wife in the presence of the jury for failing to subpoena a long list of potential witnesses from whom he could have proved the good reputation of the deceased, but didn't think it necessary.

 We believe that the argument complained about is of the kind that was clearly calculated to inflame the minds of the jury and of such character as to suggest the impossibility of withdrawing the impression produced in their minds. *See Cavender v. State*, 547 S.W.2d 601 (Tex.Crim. App.1977).

 From the record it was shown that appellant had never before been arrested except for the instant offense. The impression created by the improper argument was that the entire San Antonio Police Department knew about appellant in a negative manner. Such argument was violative of appellant's right to confront his accusers and to test the source of their knowledge. *See Ginsberg v. United States*, 257 F.2d 950 (5th Cir.1958); *Cf. Richardson v. State*, 335 So.2d 835 (Fla.Dist.Ct.App.1976); *State v. Roach*, 248 N.C. 63, 102 S.E.2d 413 (1958).

 A prosecuting attorney is permitted in his final argument to draw from the facts in evidence all inferences which are reasonable, fair and legitimate, but he may not use jury argument to get before the jury, either directly or indirectly, evidence which is outside the record. *Jordon v. State*, 646 S.W.2d 946 (Tex.Crim.App.1983) (en banc).

 A prosecutor may not relate his version of testimony a witness not called might give. *McKenzie v. State*, 617 S.W.2d 211 (Tex.Crim.App.1981).

Because the trial court erred in refusing to grant appellant's motion for mistrial, the judgment of conviction must be reversed and the cause remanded for a new trial.

Appellant urges thirteen other grounds of error in support of reversal. We address only those contentions that may once again be viable upon retrial.[1]

Appellant's ground of error twelve alleges trial court error in the overruling of his motion to compel the State to elect which culpable mental state it sought prosecution under.

The indictment alleged that appellant intentionally and knowingly caused the death of Gilbert Ramirez. The jury was authorized in the charge to convict if it found appellant intentionally or knowingly caused Ramirez's death. Appellant objected that the disjunctive submission varied from the conjunctive allegations in the indictment, and that the effect was to authorize a conviction on a theory not alleged in the indictment. Alternatively, appellant moved that the State be required to elect its theory of prosecution as either intentional or knowing. The court declined appellant's requests.

Appellant recognizes the general rule that a jury may be charged disjunctively even though the indictment alleges conjunctively. *See Vaughn v. State,* 634 S.W.2d 310 (Tex.Crim.App.1982).

However, appellant urges that *Vasquez v. State,* 665 S.W.2d 484 (Tex.Crim.App. 1984) (en banc) calls for a different result if a motion to force the State to elect is timely urged.

The court in *Vasquez* cites *Espinoza v. State,* 638 S.W.2d 479 (Tex.Crim.App.1982) as support for the limitation upon charging the jury disjunctively when a motion to compel election has been made.

*Espinoza* involved the charging of two different offenses, rather than two different means of committing a single offense, as in *Vasquez* and in the case at bar. In *Vasquez* the appellant challenged a charge that permitted the jury to find the appellant guilty if they found appellant *either* knew the habitation was within the limits

of an incorporated city or town *or* he knew it belonged to Freddie Diaz, when the indictment alleged that appellant knew that the habitation was within the limits of an incorporated city and town *and* knowing that said habitation was located on property belonging to Freddie Diaz. The Court of Criminal Appeals found that:

> Since the appellant failed to object to the charge or move to force the State to elect, and the jury returned a general verdict ... [appellant's contention was without merit.]

*Id.* at 487. Thus, as argued by appellant herein, the *Vasquez* opinion suggests that when different means of committing a single offense are alleged in an indictment, disjunctive submission and proof of either is sufficient and permissible *absent* a motion to compel election.

■ There is no statute or decision which requires the State to elect or which gives a defendant the right to compel election. *Foster v. State,* 661 S.W.2d 205 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd).

Generally, an election is necessary only when the evidence does not support the submission of an offense. *See Hill v. State,* 544 S.W.2d 411 (Tex.Crim.App.1977). Otherwise, proof of any alleged manner and means of committing an offense will support a general verdict of guilt. *Vaughn v. State,* 634 S.W.2d 310 (Tex. Crim.App.1982). Thus the different means may be submitted disjunctively where proof of either is presented. *See Pinkerton v. State,* 660 S.W.2d 58 (Tex.Crim.App. 1983); *Quinones v. State,* 592 S.W.2d 933 (Tex.Crim.App.1980); *Papes v. State,* 494 S.W.2d 910 (Tex.Crim.App.1973); *Boyd v. State,* 419 S.W.2d 843 (Tex.Crim.App.1967).

The Court of Criminal Appeals' reliance on *Espinoza* in *Vasquez* is undoubtedly misplaced.

Nevertheless, *Vasquez* did not involve a motion to compel election. Therefore, the Court's limitation on the use of disjunctive allegations in the charge to the jury in that

---

**1.** Several grounds of error involve complaints which address alleged error during jury selection or which are relevant only to a capital murder prosecution. We do not believe these complaints will arise again in view of the acquittal of capital murder.

case was unnecessary to the disposition and constitutes *obiter dictum*. We find no other support for appellant's contention that the court committed reversible error herein by failing to grant his motion to compel election.

■ Moreover, under the standard for determining if error in a jury charge requires reversal, as set out in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985) (on Motion for Rehearing), appellant has failed to demonstrate any harm resulting from submission of the allegedly improper charge. Our examination of the entire record lends support to the finding that appellant acted both intentionally and knowingly. Since the evidence supports both of the disjunctively submitted allegations the charge itself does not indicate that appellant was harmed. In the absence of the harm required by *Almanza*, there is no authority for a reversal upon this ground even if we should concede that it was error to charge in the disjunctive.

Appellant's ground of error is overruled.

By his sixteenth ground of error, appellant argues that the trial court erred in denying his motion to discover grand jury lists for the ten years preceding the return of his indictment. Appellant thus argues he was denied an opportunity to make a *prima facie* showing of discrimination against Hispanics and others in the selection of grand juries.

Appellant's motion, contrary to his assertion on appeal that the grand jury which indicted him was selected in a manner as to systematically exclude certain cognizable groups, merely sought to inspect grand jury records "to determine whether the grand juries in this county [Bexar] have been selected and treated in accordance with the law."

Thus there was never any allegation that grand juries were not selected in accordance with law but only a desire to examine records for possible violations.

The trial court denied the appellant's request to inspect grand jury lists for the previous ten years, but agreed to let appellant examine the list of the grand jury which indicted him and the array from which it was selected.

Appellant's attempt to have the ten years list sealed as part of the record on appeal was denied by the trial court. The record is silent as to whether appellant examined the list composing the grand jury which indicted him and other members of the array from which the grand jury was selected. Moreover, no allegation was ever raised by appellant that the composition of the grand jury which indicted him was other than lawfully composed.

The trial court, in overruling appellant's motion, endorsed the following reasons on the order:

This Grand Jury was selected at Random by the computerized system and the foreman was a volunteer.

■ Before evidence showing the composition of the grand juries for the preceding ten years is relevant, appellant must demonstrate that the grand jury that indicted him was composed of members which did not include the class to which appellant belongs. If the class to which appellant belongs is fully represented on the indicting grand jury the appellant suffers no injury and exclusion of members of the class from earlier grand juries is irrelevant to his case. Only if the appellant's class is substantially underrepresented on the indicting grand jury does the makeup of prior grand juries become relevant to explain whether this underrepresentation on the indicting grand jury is a statistical accident or the result of purposeful discrimination. *Espinoza v. State*, 604 S.W.2d 908 (Tex.Crim.App.1980).

■ Appellant admits that the trial court did not deny him a hearing but contends that denial of access to the record for the preceding ten years rendered the hearing meaningless. We do not agree. Appellant apparently refused to avail himself of the proffered records of the indicting grand jury. In the absence of some showing that earlier records were relevant appellant can claim no harm from denial of

those records. Nor are we persuaded that *Test v. United States,* 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975), relied upon by appellant calls for a different result. The right to inspect and copy jury lists in *Test* arose under the provisions of the Jury Selection and Service Act of 1968 (28 U.S.C.S. §§ 1861 *et seq.*) No such like authority exists within this State's statutes. Appellant's sixteenth ground of error is without merit and is, therefore, overruled.

Ground of error seventeen complains of the trial court's overruling his specially requested instruction which sought to submit the issue whether appellant's voluntary intoxication was so extreme as to negate the requisite culpable mental state. The trial court refused appellant's request but instead charged the jury that voluntary intoxication does not constitute a defense to the commission of a crime. *See* TEX.PENAL CODE ANN. § 8.04.

Appellant recognizes that Texas law is against him. *See Hawkins v. State,* 605 S.W.2d 586 (Tex.Crim.App.1980); *Lerma v. State,* 632 S.W.2d 893 (Tex.App.—Corpus Christi 1982, pet. ref'd). Nevertheless he urges us to join those jurisdictions in which voluntary intoxication is recognized as a defense to those crimes which require a specific intent. *E.g. United States v. Lilly,* 512 F.2d 1259 (9th Cir.1975); *United States v. Romano,* 482 F.2d 1183 (5th Cir.1973), *cert. denied,* 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753 (1974); *Womack v. United States,* 336 F.2d 959 (D.C.Cir.1964); *Allen v. United States,* 239 F.2d 172 (6th Cir. 1956).

■ We defer such request to the Court of Criminal Appeals and adhere to the holding in *Hawkins v. State, supra.* Appellant's seventeenth ground of error is overruled.

By his ground of error number nineteen appellant once again complains of the trial court's refusal to instruct the jury on a practice commonly adhered to in the federal courts. Specifically appellant sought to have the jury instructed that character evidence alone can create a reasonable doubt of guilt. The request was bottomed on the

fact that numerous character witnesses had testified as to appellant's good reputation for being peaceful and law abiding.

■ While recognizing that federal practice calls for such an instruction when appropriate, *see United States v. Darland,* 626 F.2d 1235 (5th Cir.1980), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982); *United States v. Callahan,* 588 F.2d 1078 (5th Cir.1979), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979) we are not prepared to require such an instruction in a state trial.

■ An examination of the entire jury charge reflects that appellant's rights were adequately protected by adherence to the requirements of TEX.CODE CRIM.PROC. ANN. art. 36.14 (Vernon Supp.1986) and art. 38.04 (Vernon 1979).

Furthermore, we are of the opinion that such a charge would have constituted a comment on the weight of the evidence. *Cf. Henry v. State,* 149 Tex.Cr.R. 321, 194 S.W.2d 264 (1946). Appellant's nineteenth ground of error is overruled.

Because we have sustained appellant's ground of error complaining of prejudicial trial court error the judgment of conviction is reversed and the cause is remanded for a new trial.

BUTTS, Justice, dissenting.

This case is reversed because at the punishment phase of trial the prosecutor, in answering defense argument that the State failed to present reputation testimony, argued:

... The defense attorney has told you that we can bring in people to say he had a bad reputation if we want to. I am sure I could have brought in the entire San Antonio Police Department to tell you that Gus Pimentel has a bad reputation.

The trial court promptly sustained an objection to the argument and instructed the jury that the arguments of counsel do not constitute evidence. If the prosecutor had stated it was true that he could have

brought in reputation witnesses but decided not to do so, or believed they were not needed, this would have been permissible as answer to invited argument. Saying he could have brought in "the entire San Antonio Police Department" was going too far, however.

Whether this error was harmful error which the instruction did not cure is the question. I would find this was error which the trial court's instruction did cure. While an answer was invited, the State's answer went beyond appropriate limits. However, the cautionary instruction by the court obviated the necessity for reversal in this case. There were no new facts injected, and the language was not so inflammatory that its harmful nature could not be remedied by the instruction. I would hold the trial court correctly refused to grant a mistrial.

For these reasons I respectfully dissent.