BENEDICT V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-310-CR

THOMAS BENEDICT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Thomas Benedict appeals his conviction for misdemeanor  driving while intoxicated (“DWI”), which was enhanced by a prior DWI conviction.  A jury found him guilty as charged, and the trial court sentenced him to 365 days’ confinement in the Denton County Jail and suspended his driver’s license for 730 days.  In three points, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction, and he asserts that the trial court erred by permitting improper jury argument.  We will affirm.

I.  Legal and Factual Sufficiency

A. Evidence at Trial

Around 11:55 p.m. on May 8, 2002, Carrollton police responded to a call and found Appellant asleep at the wheel of his car on Greenway Park Drive.  According to a police report, a portion of which was read into evidence, a “[r]esident in [the] neighborhood called dispatch regarding [a] suspicious vehicle parked in [the] roadway for almost two hours with [its] lights on.  [The] [v]ehicle was stopped in [the] roadway with [its] keys in [the] ignition and in drive.  [The] [t]wo front tires [were] on rims.”

Officer Mai-Tram Tran, who responded to the call and wrote the report, testified at trial that the car was in a lane of traffic up against an island median, the engine was running, the car was in gear, the headlights were on, and Appellant’s foot was on the brake.  The car was located “straight-on to the curb” with two flat front tires, and Officer Tran testified that damage she observed on the car’s wheels was consistent with the wheels scraping the curb.  In fact, Officer Tran stated that she thought the car had been driven on its rims.  Also, Officer Tran stated that it had been raining earlier that night; however, she testified that the roadway was dry at the time she contacted Appellant.

After several attempts, Officer Tran was able to wake Appellant, and she observed that his eyes were red, his speech was slow and slurred, and he seemed disoriented.  She instructed him to turn off his engine and get out of his car.  Without putting the car in park, Appellant turned off the engine.  Officer Tran also detected a strong odor of alcohol coming from the car, and she found a half-empty bottle of vodka in the car.  A liquor store receipt found in the car showed that the bottle had been purchased earlier that evening around 7:45 p.m.  Appellant denied drinking vodka in the car, but he admitted to having two beers that night.

Officer Nigel Renfro assisted Officer Tran.  When given the field sobriety tests, Appellant was unable to complete the horizontal nystagmus gaze and one-leg-stand tests.  Both officers testified at trial that, based on their experience and observations of Appellant after finding him in his car, Appellant was intoxicated.  Consequently, Appellant was arrested and taken to the police station, and his car was impounded.  Officer Renfro testified that no attempt was made to drive Appellant’s car after he got out of it and before it was towed away, but he stated that, even with the flat tires, the car “seemed to be operating in all respects.”

While in the intoxilyzer room, Appellant stated that he did not know what had happened to his car.  Officer Tran also testified that, despite Appellant’s admission at the site of his arrest to drinking two beers, in the intoxilyzer room,  he stated that he had only had one beer.  In the intoxilyzer room, Appellant was asked to perform the walk-and-turn and one-leg-stand field sobriety tests, and he failed these tests because he was unable to complete them.  The officers read Appellant his statutory DWI warnings, and Appellant then voluntarily submitted to a breath test.  Thirty-seven minutes after his arrest, Appellant’s blood-alcohol concentration was .270, more than three times the statutory limit of .08.  
See
 
Tex. Penal Code Ann.
 § 49.01(2)(B) (Vernon 2003).

In addition to the testimony of Officers Tran and Renfro, the State showed the jury videotapes from the scene of Appellant’s arrest and the intoxilyzer room.  While the tape made from the camera in Officer Tran’s car did not have any sound, it showed the position of Appellant’s car at the time of the stop.  Appellant’s car was stopped in the right lane of the street.  The left side of the car was parallel and close to the island median, which divided the left and right lanes.  Further up the street, cars were parked along the right side of the street.  When the officers approached Appellant’s car, his brake lights were lit.

On the tape from the intoxilyzer room, Officer Tran read Appellant his statutory DWI and 
Miranda
 warnings.  Among other things, the tape shows Appellant waive his rights under 
Miranda
 and agree to answer Officer Tran’s questions.  Appellant admitted that he was driving before he stopped.  He said he was coming from Coppell
(footnote: 2) and going to Harry Hines.  Appellant admitted he had been drinking and stated that he had one beer “about [10:00].”

Appellant called his fiancée Carla Hill to testify about the events of May 8, 2002.  Hill testified that Appellant called her from his cell phone around 10:00 p.m. that night for help because ”he had busted up some tires.”  Hill stated that she drove around looking for Appellant for several hours, but she said that she was unable to find him.  Hill testified that it was raining that night and that the rain was heavy at times.  She said the roads were “slippery.” Eventually, Hill went home, and she learned the next morning that Appellant had been arrested.

Appellant also called his mother Dee Holliday to testify.  Dee testified that on May 8, 2002, she was awakened around 10:00 p.m. when she received a call for assistance from Appellant.  Dee testified that she understood “there had been an accident and there were two flat front tires,” but she told Appellant not to worry about it.

Dee testified that she did not try to help Appellant because she did not know where he was and because she had just taken some medication in preparation for going to bed.  Dee testified that she “wasn’t comprehending the whole situation,” but that after she hung up the phone, “it dawned on [her] what had been said.”  Dee said that she tried to call Appellant back on his cell phone twice and could not reach him.  Dee unsuccessfully tried to reach Hill and then called her daughter.  At some point, Hill called Dee back, and Dee learned that Appellant was in jail.

Appellant and Dee went to the impound yard the next morning and attempted to drive the car home.  Dee described the car as “my vehicle,” but she testified that Appellant “drives it.”  While at the impound yard, Appellant did not attempt to drive the car.  Dee got in the car and tried to drive it, but  “could not drive it at all.”  When asked on direct examination, Dee agreed that the car was in an “inoperable condition.”  Dee testified that she turned the engine on, put the car in drive, applied gas, but it would not go forward.  On direct examination, Dee agreed that “no matter what [she] tried, the car would not go forward.”  However, when asked on cross-examination how much gas she gave the car, Dee testified “not a lot.”

As a result, she asked that the car be moved for her, and it was towed to the front of the impound yard.  Dee and Appellant attempted to remove the wheels but had to call Dee’s husband to come and help them repair the car. Dee agreed on redirect examination that after her husband had replaced the “tires and rims,” the car was in an “operational condition.”

Appellant called his step-father John Holliday, who testified that Defense Exhibits 9 and 9A were the left front tire and wheel from the Toyota car Appellant had been driving on May 8, 2002.  John testified that he went to the Carrollton pound on May 9 and took the front tires off of the car.  According to John, both tires were “unusable” and one of “the wheel[s] was jammed on so tight after you took the lug nuts off, I had to go back home and get a big hammer and get under there and drive it to get it off.”  John put two new tires and a new left wheel on the car and then left the impound yard.  While John did not drive Appellant’s car, he testified that since he had replaced the wheel and tires, he had since seen his wife and Appellant driving the car.

On cross-examination, John acknowledged that he was not at the scene of the accident on May 8, he did not see the car being towed to or from the impound yard until the next morning, and that the car was brought out to the front of the impound yard on another wrecker.  John also testified that Appellant called his house on the night of May 8, but he stated that he did not speak with Appellant.  John testified that he and his wife lived around three miles from the intersection where Appellant’s car was located on May 8, but neither he nor his wife went to pick up Appellant.  Upon hearing and considering all of the evidence presented at trial, a jury found Appellant guilty.

B. Legal Sufficiency Standard

In his first two points, Appellant complains that the evidence is legally and factually insufficient to sustain his conviction for DWI.  
See
 
Tex. Penal Code Ann
. § 49.04(a) (Vernon 2003).  In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

C. Factual Sufficiency Standard

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, No. 539-02, 2004 WL 840786, at *4 (Tex. Crim. App. Apr. 21, 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
.
 at *7.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 
at *4; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
2004 WL 840786, at *4.

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at *7, 9.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

D. Application of Law to Facts

“A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.”  
See
 
Tex. Penal Code Ann
. § 49.04(a).  In challenging the legal and factual sufficiency of the evidence to support his conviction, Appellant does not dispute that he was intoxicated at the time the officers found him in his car.  Rather, Appellant argues that, from the totality of the circumstances, the evidence is not legally or factually sufficient to establish that he operated the car while in the presence of the police or that, prior to the officers’ arrival, he was intoxicated while operating his car.  
See id
. We disagree.

There is no statutory definition of “operate,” but the Texas Court of Criminal Appeals has held, “[t]o find operation under [the DWI] standard, the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of [the] vehicle in a manner that would enable the vehicle’s use.”  
Denton v. State
, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995).  In 
Denton
, the court
 also noted that, “while driving does involve operation, operation does not necessarily involve driving.”  
Id
. at 389; 
see also Barton v. State
, 882 S.W.2d 456, 459 (Tex. App.—Dallas 1994, no pet.) (refusing to accept the contention that to operate a vehicle within the meaning of the statute, the driver’s personal effort must cause the automobile to either move or not move).

Appellant points to 
Ballard v. State
, 757 S.W.2d 389, 391 (Tex. App.—Houston [1
st
 Dist.] 1988, pet. ref’d) and 
Reddie v. State
, 736 S.W.2d 923, 927 (Tex. App.—San Antonio 1987, pet. ref’d), where the evidence was found to be insufficient to show “operation,” contending they are similar to this case.  However, we decline to follow these cases because of their limited pre-
Geesa
 value.
(footnote: 3)
 Both Appellant and the State discuss numerous cases concerning challenges to the legal and factual sufficiency of the evidence on the issue of operating a vehicle while intoxicated, but we agree with the Austin Court of Appeals’s observations that “no two cases are factually identical and that the sufficiency of the evidence must be determined on a case-by-case basis.”  
Pope v. State
, 802 S.W.2d 418, 420 n.1 (Tex. App.—Austin 1991, no pet.).  Upon our review of the record, we conclude that the State proved with legally and factually sufficient evidence that Appellant was operating his vehicle while intoxicated at the time the police arrived.

In this case, the police came upon Appellant’s car as he was sitting in the driver’s seat of the car his mother allowed him to drive, asleep, with the engine running, the car in gear, the headlights on, and his foot on the brake.  The car was in a lane of traffic, in a residential area, with two flat tires, and had been there for close to two hours.  When instructed, Appellant turned his engine off without putting the car in park.  Officer Tran testified that she thought the vehicle had been driven on its rims, and Officer Renfro testified that Appellant’s car “seemed to be operating in all respects.”  We conclude that the evidence, when viewed in the light most favorable to the verdict, indicates that Appellant, while intoxicated, exerted personal effort upon his car to affect its functioning in a manner that would enable the car’s use.  
See Denton
, 911 S.W.2d at 390; 
see, e.g., Hearne v. State
, 80 S.W.3d 677, 679-81 (Tex. App.—Houston [1
st
 Dist.] 2002, no pet.) (holding evidence of operation legally and factually sufficient where truck was in moving lane of traffic on service road to highway, with engine running, gearshift “in park,” driver was alone and asleep in the driver’s seat, driver was not touching the accelerator or brake, officer did not know how long truck had been there, and driver stipulated that the “events in this case occurred while I was legally intoxicated”); 
Freeman v. State
, 69 S.W.3d 374, 375 (Tex. App.—Dallas 2002, no pet.) (holding evidence of operation legally and factually sufficient where SUV’s motor was running, gearshift was in the “drive position,” lights were on, right front tire was resting against a curb of a public street, driver was asleep at the wheel); 
see also Garver v. State
, No. 05-01-01032-CR, 2002 WL 1133019, at *3 (Tex. App.—Dallas May 31, 2002, pet. ref’d untimely filed) (not designated for publication)
(footnote: 4) (stating that turning car’s engine off “was just as much exerting personal effort to control a vehicle to affect its functioning as starting an engine and revving the motor or putting a car in gear”).  Thus, the evidence is legally sufficient to show that Appellant was operating his car while intoxicated.  Appellant’s first point is overruled.

On Appellant’s factual insufficiency challenge, Appellant directs us to his mother’s testimony that the car could not be driven and to the fact that the police did not attempt to drive the car.  He argues that, because of the evidence suggesting that the car was unable to be driven, it cannot be concluded that he was operating what was in effect an inoperable car at the time the police arrived.  The evidence is conflicting as to whether the car could have been driven.  Officer Renfro testified that the car was “definitely driveable,” and Officer Tran stated that she thought the car could have been driven on its rims. As the factfinder in this case, the jury judged the credibility of the witnesses and could have “believe[d] all, some, or none of the testimony.”  
See
 
Chambers v. State
, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); 
Penagraph v. State,
 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981).

Further,

[a] factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record.  Such an approach occasionally permits some credibility assessment but usually requires deference to the jury’s conclusion based on matters beyond the scope of the appellate court’s legitimate concern.  Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury’s determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.

Johnson v. State
, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000) (citation omitted).  In this case, the jury, as the factfinder, determined the weight and credibility to be given to each witness’s testimony and ultimately found that Appellant operated his car while intoxicated.  
See id.
 at 7.  Because the available record does not clearly reveal that a different result is appropriate, we must defer to the jury’s determination.  
See id
.

Moreover, even if the car could not be driven because of damages to the front tires, as we observe above, the court of criminal appeals in 
Denton
 has rejected the argument that a vehicle is not operated when it is not actually moved.  
Denton
, 911 S.W.2d at 389-90.  In fact, the court upheld a defendant’s conviction for unauthorized use of a motor vehicle, concluding that he had operated a pickup truck “by starting the ignition and revving the accelerator,” even though the truck would not move, having not had sufficient time to warm up.  
Id
. at 388, 390.  As such, the State did not have to prove that Appellant drove or operated a fully-functional car.  
See id.
; 
Barton
, 882 S.W.2d at 459; 
see also Edwards v. State
, No. 03-02-00373-CR, 2003 WL 22248850, at *1-2 (Tex. App.—Austin Oct. 2, 2003, no pet.) (mem. op.) (not designated for publication) (holding defendant operated car by shifting from forward to reverse and spinning the car’s wheels, even though he was unable to dislodge it from a pile of dirt on the side of the road).  Instead, the State only had to prove that Appellant operated his car. 
 See
 
Tex. Penal Code Ann
. § 49.04(a).

Upon reviewing the evidence under the applicable standard of review, giving due deference to the factfinder’s determinations, we conclude that the evidence presented at trial is factually sufficient to establish beyond a reasonable doubt that Appellant operated his car while intoxicated.  
See
 
Zuniga
, 2004 WL 840786, at *4, 7, 9; 
Denton
, 911 S.W.2d at 390; 
Hearne
, 80 S.W.3d at 679-81; 
Freeman
, 69 S.W.3d at 375.  Accordingly, Appellant’s second point is overruled.

II.  Jury Argument

In his third point, Appellant argues that the trial court erred by permitting improper closing argument that contained a misstatement of law or was contrary to the court’s jury charge.  Appellant challenges the following portion of the State’s closing argument:

[STATE]:  You’ve heard all the evidence in this case.  The law states that if someone is in a vehicle, the engine is running, person with their foot on the brake -- even if they don’t have their foot on the brake --

[DEFENSE COUNSEL]:  I’m going to object, Your Honor.  This is not the law in this case.  There’s no such law in the charge.

[STATE]:  That is what the case law states, Your Honor.

THE COURT:  And I’ll -- what I’m going to tell you is, you can argue that is a reasonable summation of the evidence.  It’s not in the Court’s charge, and so I’m going to tell you, you can’t tell them that’s exactly what the law is.  You can argue that it is a reasonable summation of the evidence.  To that extent, I’m overruling your objection, [Defense Counsel], and you can have a running objection to it.

[DEFENSE COUNSEL]:  But to keep saying this is law, this is law, what is introduced into evidence, I have no problem --

[STATE]:  Your Honor, speaking objections.

THE COURT:  Okay.  Do we need to take a break so you can get your objection on the record?

DEFENSE COUNSEL]:  No.  I just want to make it clear.

THE COURT:  Okay.  The point is, the law, as far as the jury’s concerned, is what I’ve got in the charge.  So don’t tell them anything else, other than that.  I mean, you can make your arguments, but I’m just telling you, you can’t state as specific what the law is, other than what’s in the charge.

[STATE]:  The reason for this is there’s no definition in the charge for drove, there’s no definition in your charge for operating, but it is drove or operating a motor vehicle.

Operated.  We were asked in voir dire -- we asked all you folks, what does it mean to operate.  And I think some of you, maybe not you people who are sitting here, but some of the people said engine running, foot on the brake.  That’s what operated means to us.  Common sense.  That’s what operated is.  The car could have lurched forward.  What about when the officer was standing in front of the car flashing their light?  What if he had snapped awake then?

THE COURT:  Seven minutes now.

[STATE]:  That is what the elements of the offense are, ladies and gentlemen, and that is what the Defendant did that night.  He operated a motor vehicle, not just while intoxicated but while he was drunk.  Do not let him escape responsibility.  Do not let defense counsel come up here and tell you that that’s not the law, because it is.  Operated.  Thank you.

Appellant first contends that the State gave the jury an incorrect definition of “operation” during voir dire, a problem which was compounded by the State’s closing argument.  As the State points out, however, Appellant did not object during voir dire to the alleged misstatement of the law.  It is well settled that the failure to object to statements made during voir dire forfeits the right to complain about them on appeal.  
Tex. R. App. P.
 33.1(a)(1); 
Draughon v. State
, 831 S.W.2d 331, 336-37 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 926 (1993); 
Jenkins v. State
, 870 S.W.2d 626, 629 (Tex. App.—Houston [1
st
 Dist.] 1994 pet. ref’d), 
cert. denied
, 516 U.S. 1080 (1996).  Therefore, Appellant has waived his right to complain of any error occurring during voir dire as to the trial court allowing the State to misstate the law.

Appellant next asserts that the trial court erred in overruling his objection to the State’s closing argument because the State misstated the law and argued contrary to the law contained in the charge.  In response to Appellant’s complaint on appeal, the State argues that its closing argument was a proper summation of the evidence, made with reasonable deductions from the evidence, contained no misstatements of law, and was not contrary to the jury charge.  To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.  
Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

It is improper to argue contrary to the law contained in the jury charge; however, merely going beyond the language of the charge is not erroneous.  
State v. Renteria,
 977 S.W.2d 606, 608 (Tex. Crim. App. 1998) (“[T]here is no error in correctly arguing the law, even if the law is not included in the court’s charge.”).  Furthermore, the law is well-settled that a party does not improperly argue during jury argument by making arguments based on legal principles not contained in the court’s charge.  
Id.; Middlebrook v. State,
 803 S.W.2d 355, 360-61 (Tex. App.—Fort Worth 1990, pet. ref’d); 
Gillis v. State,
 694 S.W.2d 245, 251 (Tex. App.—Fort Worth 1985, pet. ref’d).  Each side is permitted to discuss the facts admitted into evidence “and to give a reasonable explanation of the law applicable to that case.”  
Provost v. State
, 631 S.W.2d 173, 176 (Tex. App.—Houston [1
st
 Dist.] 1981, pet. ref’d).  Legal concepts may be explained as long as such examples do not constitute statements of the law contrary to that contained in the charge.  
Id
.; 
Givens v. State
, 554 S.W.2d 199, 201 (Tex. Crim. App. 1977).

When viewed in context, the State’s argument consisted of a summation of the facts in evidence concerning whether Appellant operated his car and an argument that his actions constituted operation under the law.  Because the State’s argument was not a misstatement of the law or contrary to the charge, we conclude that the trial court did not err in overruling Appellant’s objection to this portion of the State’s closing argument.  Accordingly, Appellant’s third point is overruled.

III.  Conclusion

Having overruled Appellant’s three points, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  September 23, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Appellant first stated that he was coming from Carrollton, but then stated that he was coming from Coppell.

3:
In these cases the reviewing courts were required to apply the reasonable hypothesis of guilt analytical construct.  
See Geesa v. State
, 820 S.W.2d 154, 158 (Tex. Crim. App. 1991), 
overruled in part on other grounds
, 
Paulson v. State
, 28 S.W.3d 570 (Tex. Crim. App. 2000).  In other words, as to a conviction based on circumstantial evidence, the State had to exclude all reasonable hypotheses, other than the defendant’s guilt, in order for the evidence to be legally sufficient on appeal. 
 Id
. at 161.  The reasonable hypothesis analytical construct was overturned in 
Geesa
 and no longer binds this court. 
 Id
.  Thus Appellant’s cited pre-
Geesa 
authorities are “not controlling and are of limited value.” 
 Barton
, 882 S.W.2d at 458-59; 
Wilson v. State
, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999).

4:
See
 
Tex. R. App. P.
 47.7 (providing that unpublished cases may be cited, although they have no precedential value).